# Savage *v.* Wallace.

### *Trespass by Animals on Crop.*

(Decided Feb. 3, 1910. 51 South. 605.)

1. *Animals; Trespass by Cattle; Common Law Rule.*—The common law rule that every man must keep his cattle within his own close and that rendered the owner liable in damages in trespass for damages if they escaped. has never prevailed in this state, the same being inconsistnt with our general statute with reference to estrays, enclosures and trespass by cattle.

2. *Statute; Reference Statutes; Repeal.*—The repeal, alteration or change of one reference statute does not operate a repeal, alteration or change of the other.

3. *Same; Constitutional Restrictions.*—Reference statutes are not strictly amendatory or revisory in character, and hence, are not obnoxious to the constitutional provision against revising, amending or extending the provisions of a law by reference to its title only.

4. *Same; Validity; Certainty; Stock Law.*—Construing together sections 1, 3 and 4, of Local Acts 1900-1, p. 2646, it is held that the word "stock law" could only refer to some stock law existing in the state at the time of the passage of the act, and that where there was no stock law in existence at that time, the words were meaningless and as the statute contained nothing indicating what means must be used to confine stock or under what conditions stock could

[Savage v. Wallace.]

be allowed to run at large, and that this could only be determined by reference to some undesignated and wholly indeterminate stock law, such statute is uncertain, vague and indefinite, and ineffectual to declare any right for persons injured by reason of stock running at large and damaging crops.

APPEAL from Fayette Circuit Court.

Heard before Hon. S. H. SPROTT.

Action by W. H. Wallace against Victor Savage in trespass for damages resulting from stock going upon his crops. Judgment for plaintiff and defendant appeals. Reversed and remanded.

DANIEL COLLIER, R. H. SCRIVENER, R. F. PETERS, and W. L. HARRIS, for appellant.—The contention of the appellant is that the act of providing a stock law for Fayette county, Alabama, found in Local Acts 1900-01, p. 2646, et seq., was void for uncertainty and indefiniteness, and that the court establishing the stock law district obtained no jurisdiction of the subject-matter. On the question of jurisdiction they cite.—*Molett v. Keenan,* 22 Ala. 484; *Pettus v. McLanahan,* 52 Ala. 55; *Joyner v. Winston,* 68 Ala. 129; *Flowers v. Grant,* 129 Ala. 275; *Savage v. Wolf,* 69 Ala. 569; *Miller v. Jones,* 80 Ala. 89; *Reid's Case,* 136 Ala. 91; *Corey v. Dennis,* 93 Ala. 440; *Henderson v. Tucker,* 70 Ala. 381.

NESMITH & MCNEEL, for appellee.—No brief reached the Reporter.

SAYRE, J.—The plaintiff below, appellee here, sued the defendant before a justice of the peace for damage done by defendant's cattle to plaintiff's crop. On appeal to the circuit court the plaintiff had a judgment. The appeal to this court raises the question of the validity of an order of the judge of probate of Fayette county declaring Hice precinct, No. 7, to be a stock-law precinct. The proceeding to that end was had under

the provisions of an act entitled "An act to provide and establish a stock law for Fayette county, Alabama," approved March 5, 1901 (Loc. Laws 1900-01, p. 2646). Section 1 of that act provides as follows: "That when a majority of the bona fide electors of any precinct in Fayette county shall file a petition with the probate judge of the county stating that they desire a stock law for said precinct, it shall be the duty of the probate judge to ascertain that a majority of the bona fide electors of such precinct has signed such petition, and if so he shall enter such precinct as a stock-law precinct, subject to the provisions of this act, which entry shall be in a book kept for that purpose: Provided, that petitions filed and entered as stock law precincts shall go into effect within six months after its entry: Provided further, that but one petition shall be filed in any one year."

We must consider fundamental objections which are urged against this act. It is altogether plain on a casual reading that in order to sustain it we must judicially know the legislative intent in using the words "stock law." Without some explication and unfolding of the meaning of these words, to be found in the common law or in other statutes, the entire meaning of the statute is lost. If we might infer that the Legislature intended to adopt the common law on the subject as the basic principle of the statute, there would be no difficulty in sustaining it. But so much of the common law, which required every man to keep his cattle within his own close and made the owner liable in trespass for resulting damages if they did escape, has never prevailed in this state. This court long ago reached this conclusion upon consideration of that law's inconsistency with the general statutes in reference to estrays, inclosures, and trespass by cattle, dating back to territorial times.

[Savage v. Wallace.]

—*N. & C. R. R. v. Peacock*, 25 Ala. 229; *Joiner v. Winston*, 68 Ala. 129. It was the purpose, to be sure, to introduce into Fayette county a statutory system similar in some respects to the common law; but the precise question is whether we can say that the use of the words "stock law" indicated so much. We think not. We think that the reference, if it had colorable meaning, was to some system of law prevailing in the state, at the time of the enactment, rather than the law of England, which never prevailed in this state.

There is a class of statutes, known as "reference statutes," which impinge upon no constitutional limitation. They are statutes in original form, and in themselves intelligible and complete—"statutes which refer to, and by reference adopt, wholly or partially, preexisting statutes, the statute referred to is treated and considered as if it were incorporated into and formed a part of that which makes the reference. The two statutes coexist as separate and distinct legislative enactments, each having its appointed sphere of action; and the alteration, change, or repeal of the one does not operate upon or affect the other."—*Phoenix Assurance Co. v. Fire Department*, 117 Ala. 631, 23 South. 843, 42 L. R. A. 468. Such statutes are not strictly amendatory or revisory in character, and are not obnoxious to the constitutional provision which forbids a law to be revised, amended, or the provisions thereof to be extended or conferred by reference to its title only. That prohibition is directed against the practice of amending or revising laws by additions to, or other alterations, which without the presence of the original act are usually unintelligible.—*Ex parte Pollard*, 40 Ala. 100; *State v. Rogers*, 107 Ala. 444, 19 South. 909, 32 L. R. A. 520.

But the words "stock law" in the statute under consideration cannot be construed as a reference to the per-

missible kind. Colorably they could have referred only
to some stock law then existent in this state. At that
time there was no general statute under which stock-
law districts could be created. The elaborate system now
in the Code has been enacted since that date.—Code
1907, c. 139. And the Legislature is now forbidden to
pass any law establishing separate stock districts.—
.Const. 1901, § 104. By our previous references to con-
stitutional provisions we will not be understood as as-
serting that, if there had prevailed a stock law in Fay-
ette county at the time of the adoption of the statute
we have in hand, this statute last referred to would have
offended against the constitutional provision which pro-
hibits amendment by reference to title only. The argu-
ment is that the constitutional provision or the doctrine
of permissible statutes neither helps nor hurts the stat-
ute in question. Our precise meaning is that the words
"stock law" are no permissible reference to any known
law, and are therefore meaningless. Nor will we be un-
derstood as saying that, if the statute had contained a
complete and intelligible law, the use of the words "stock
law" would affect its validity. In that event it would
have amounted to this: A stock law is hereby enacted
as follows, and here would follow the provisions of a
complete and intelligible statute. But such is not the
case. After providing in its first section for the crea-
tion of stock districts, as we have seen in the quoted
section, the essential features of a stock law are provid-
ed in sections 3 and 4 by reference merely to some stock
law. Thus in section 3 the provision is that any person
injured by any live stock running at large in violation
of this act shall have a lien, etc. And in section 4 the
provision is that, when any person or propeety is injur-
ed by stock running at large contrary to the provisions
of this act, the person injured may take up, etc. But

[Sandlin, et al. v. Kennedy Stave & C. Co.]

there is not a word in the statute to indicate what means must be used to confine stock, nor to indicate when and under what conditions stock may run at large. These things must be learned by reference to some undesignated and wholly indeterminate stock law.·

For these reasons we conclude that the statute under consideration is uncertain, vague, indefinite, and ineffectual, in so far as it undertakes to declare any rights under which the plaintiff claimed. The demurrer taking this fundamental ground should have been sustained. Other assignments of error need not be considered. Reversed and remanded.

DOWDELL, C. J., and ANDERSON and EVANS, JJ., concur.