[No. 9659.  *En Banc.*  July 7, 1911.]

THE STATE OF WASHINGTON, *on the Relation of Gilbert Hunt
et al., Respondent,* v. EUGENE TAUSICK, *as Mayor of
the City of Walla Walla, Appellant.*[1]

STATUTES — SPECIAL LEGISLATION — MUNICIPAL CORPORATIONS.
Const., art. 2, § 28, subd. 8, prohibiting the enactment of special
laws to incorporate any city or amend a city charter, is not vio-
lated by Laws 1911, p. 521, authorizing the cities of a specified pop-
ulation to adopt the commission form of city government.

SAME—POPULATION OF CITY—JUDICIAL NOTICE.  Laws 1911, p. 521,
authorizing cities having a population of 2,500 and less than 20,000
to adopt the commission form of city government, does not restrict
its application to any particular city or special territory, as the
court takes judicial notice that there are many cities within the
limitation.

MUNICIPAL CORPORATIONS—LOCAL APPLICATION OF STATUTES.  Laws
1911, p. 521, authorizing the adoption of the commission form of
city government by any city now or hereafter having the required
population, is not unconstitutional because of its optional features.

SAME—CLASSIFICATION OF CITIES.  Laws 1911, p. 521, authorizing
cities of the second class and cities of the third class having a

[1]Reported in 116 Pac. 651.

population of 2,500 to adopt the commission form of city govern-
ment, does not violate Const., art. 11, § 10, requiring classification
of cities by general laws in proportion to population, although it
creates a new classification for this purpose within the old classes;
since the constitution does not require uniformity of general laws
relative to municipal corporations, and the act is general and of
uniform operation.

CONSTITUTIONAL LAW—LEGISLATIVE POWER—DELEGATION — MUNIC-
IPAL CORPORATIONS. Laws 1911, p. 521, authorizing the adoption of
the commission form of city government, is not an unwarranted
delegation of legislative power, in violation of Const., art 2, § 1,
since it is complete in itself and may properly leave to a local
board the determination of when or whether it will go into opera-
tion.

MUNICIPAL CORPORATIONS—ADOPTION OF COMMISSION FORM OF GOV-
ERNMENT—ELECTIONS—SPECIAL OR GENERAL. Laws 1911, p. 521, § 2,
providing that the commission form of city government may be
adopted at a special election held for the purpose, is not void in
that Const., art. 11, § 10, authorizes existing cities to become organ-
ized under general laws whenever a majority of the electors voting
at a general election shall so determine; since the provision for a
"special" election may be rejected as surplusage and the election held
at the city's general election; neither does the constitutional pro-
vision make general the election held for such purpose, but merely
fixes the time for holding it.

STATUTES—ENACTMENT—AMENDMENTS OR MODIFICATION OF EXIST-
ING LAWS. Laws 1911, p. 521, § 2, authorizing the adoption of a
commission form of city government, and leaving in force all ex-
isting laws not inconsistent with the act, is not violative of Const.,
art. 2, § 37, providing that no act shall be revised or amended with-
out reference to its title, setting forth the amended section in full,
and § 38, providing that amendments shall not be allowed which
shall change the scope or object of the bill; since those sections of
the constitution do not apply to the modification of existing laws
by acts complete in themselves or by supplemental acts not alter-
ing the original act.

Appeal from a judgment of the superior court for Walla
Walla county, Brents, J., entered June 5, 1911, in favor of
the plaintiff, granting a peremptory writ of mandate to
call a special election for the adoption of a commission form
of government.     Affirmed.

*Sharpstein & Sharpstein* and *T. P. & C. C. Gose*, for appellant.

*Edward C. Mills, J. C. Hurspool,* and *Rader & Barker,* for respondent.

CROW, J.—Action in mandamus to compel Eugene Tausick, mayor of Walla Walla, to call an election under § 2, chap. 116, page 521, Laws of 1911. An alternative writ was issued. The mayor's motion to quash was denied. A peremptory writ was granted, and the mayor has appealed.

Appellant's sole contention is that the act in question is unconstitutional and void. It is entitled: "An act relating to the organization, classification, incorporation and government of municipal corporations, under a commission, and declaring an emergency." It has been ably reviewed and discussed in the briefs, and we will call attention to some of its features. Section 1 provides that any city, now or hereafter having a population of 2,500 and less than 20,000, as shown by the last state or Federal census or by any special census taken by the city in the manner provided by law, may become organized as a city under the provisions of this act. It is conceded that Walla Walla has a population of 19,364, as shown by the last Federal census. Section 2 provides that, upon the petition of electors equal in number to twenty-five per centum of the votes cast for all candidates for mayor at the last preceding election, the mayor shall submit the question of organization of the city at a special election, and that if a majority of the votes cast favor the proposition, the city shall proceed to the election of a mayor and two commissioners. Section 4 provides that all existing laws governing cities of the second class or applicable thereto, not inconsistent with the provisions of this act, shall apply to and govern cities organized under this act; that all existing by-laws, ordinances and resolutions of the city shall remain in force until altered or repealed under the provisions of this act; that territorial limits shall remain the same; and that all

property rights and other rights shall continue and be protected.   Section 7 provides for the nomination of candidates for mayor and commissioners at a primary election, nonpartisan in character, for petitions for nominations, the publication of names of candidates, the form of ballot, the method of voting, the classification of voters, the canvass of votes, and publication of the result; that the two candidates receiving the highest number of votes for mayor and the four candidates receiving the highest number of votes for commissioners shall be placed upon the ballot as the candidates for mayor and commissioners, at the general municipal election, and that the method of conducting the election, canvassing votes, and announcing the result shall be the same as by law provided for the election of officers in such cities, as far as the same are applicable and not inconsistent with this act. Section 10 provides that each member of the commission shall have the right to vote on all questions; that two members shall constitute a quorum; that two affirmative votes shall be necessary to adopt any motion, resolution, or ordinance; that yeas and nays are to be called and recorded; and that the mayor shall preside, but shall have no right of veto.   Section 11 reads as follows:

"Cities organized under the provisions of this act shall have all the powers which cities of the second class now have, or hereafter may have conferred upon them; all which said powers shall inhere in and be exercised by the commission provided for in this act.   The executive and administrative powers, authority and duties in such cities under commission, shall be distributed into and among three departments, as follows:

"(1)   Department of public safety.
"(2)   Department of finance and accounting.
"(3)   Department of streets and public improvements.

"The commission shall determine by ordinance the powers and duties to be performed in each department; shall prescribe the powers and duties of officers and employees; may assign particular officers and employees to one or more of the departments; may require an officer or employee to per-

form duties in two or more departments, and may make such other rules and regulations as they may deem necessary or proper for the efficient and economical conduct of the business of the city."

Section 12 provides that the mayor shall be superintendent of the department of public safety, that the two commissioners shall be assigned to the remaining departments, and that the commission shall, by majority vote, appoint a clerk and such other officers and assistants as shall be provided by ordinance. By other sections the chapter fixes the compensation of the commissioners according to population, provides for regular meetings, for the method of passing ordinances or resolutions relative to public improvements, public works, and the granting of franchises; provides for the recall of elective officers, and for the initiative and referendum.

Appellant's controlling contention is, that this act is in conflict with subd. 8, § 28, art. 2, and also § 10, art. 11, of the state constitution. The former provides that:

"The legislature is prohibited from enacting any private or special laws in the following cases: . . .

"(8)   For incorporating any town or village, or to amend the charter thereof . . ."

The latter provides that:

"Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification, in proportion to population, of cities and towns, which laws may be altered, amended, or repealed. . . ."

In 1890 municipal corporations in this state having less than 20,000 population were, by statute, classified as follows: Those having less than 20,000 and more than 10,000, as cities of the second class; those having less than 10,000 and more than 1,500, as cities of the third class; and those having not more than 1,500 nor less than 300, as towns. Rem. & Bal. Code, §§ 7479, 7480. For the general laws relating to the organization, powers, and government of cities

of the second class, see Rem. & Bal. Code, §§ 7584-7670. For those pertaining to cities of the third class, see Rem. & Bal. Code, §§ 7671-7718. The act now in question authorizes all cities of the population of cities of the second class, and a portion of the cities of the third class, to adopt the commission form of government. No city of the third class having less than 2,500 population can avail itself of its provisions. The entire act shows that cities exercising their option to thus organize are to have a governing body consisting of a mayor and two commissioners known as a commission, supplemented by a city clerk and such other subordinate officers and employees as may be provided by ordinance, and are to have and enjoy all powers and privileges of cities of the second class not inconsistent with the commission act. A new classification is thus created, of all municipal corporations within this state which have a population of 2,500 and less than 20,000. Although the act, by a novel system of procedure, authorizes the adoption of a commission form of government by existing cities having a population within specified limits, it neither contemplates, nor does it require, any material change in their municipal functions. On the contrary, it only affects the instrumentalities through which such functions are to be exercised. Although cities of the third class having more than 2,500 population electing to organize under this act will thereafter be subject to all existing general laws governing cities of the second class or applicable thereto and not inconsistent with this act, no lack of uniformity of operation of the law results therefrom, as all cities of the third class having the same population may, at their option, avail themselves of the same privileges and rights.

If we correctly grasp appellant's first contention, it is, as before stated, that the act violates subdivision 8 of § 28, art. 2, of the state constitution, in that it is a private or special statute providing for the incorporation of cities; that its proposed application is restricted to certain cities; and that it might in fact be restricted to a single city should all others

refuse to avail themselves of its benefits. The clause of the constitution thus cited was not intended to prohibit the enactment of a statute such as the one now assailed, which is general in its terms and applicable to all cities within this state having a population of 2,500 and less than 20,000. We take judicial notice of the fact that many cities within this range of population are now organized and existing in this state. If they so elect, all of them, under the act, may avail themselves of the privileges it grants, and may do so without materially affecting their existing municipal functions. The act does not select any particular city or special territory to which it shall exclusively apply. Nor does it so limit the required population as to restrict its application to a single municipality. The constitutional inhibition cited is directed against the enactment of a statute selecting a specified or limited locality, and creating therein a particular municipal corporation, to which individual powers are exclusively granted.

Some contention is also made that what may be called the local option feature of the statute renders it invalid as legislation special in its character and lacking uniformity in its application throughout the state. We find no merit in this contention. The act provides that *any city now or hereafter* having the required population may become organized under its provisions, thus making it applicable to all such cities now existing or that may hereafter exist. This is tantamount to saying it is intended to affect every city in the state having the required population. All cities availing themselves of its benefits will find the measure of their authority, powers and municipal functions in the act itself, and in existing laws pertaining to cities of the second class which remain in force. This may be a peculiar, unique and unusual method of organization for municipal government, which will perhaps from time to time call for judicial construction. Possibly the plan thus provided for a commission form of government may not commend itself to universal approbation, but such suggestions do not concern the courts. Laws will not be

held invalid for any such reasons.    All statutes regularly en-
acted and approved by the governor are presumed to be con-
stitutional, and the courts will not declare them invalid unless
they clearly violate some constitutional provision.

. As cities of the third class having more than 2,500 popu-
lation may, at their option, organize under this act, while
other cities of that class having less population may not do
so, appellant further contends a second and arbitrary classi-
fication of cities of the second and third classes is made—a
classification within a classification; that the constitution,
§ 10, art. 11, *supra*, contemplates a classification in accord-
ance with population, and that all laws affecting or pertain-
ing to each separate class must be of uniform operation
throughout the state.    Although corporations for municipal
purposes must be created by general laws and must be in-
corporated, organized and classified in proportion to popu-
lation, it will be noted that our constitution relative to such
corporations does not require uniformity of such general
laws.    It only requires that the legislation shall not be pri-
vate or special.    The controlling purpose of our constitu-
tion in this regard was to prohibit one city from receiving
powers and privileges not equally open or available to all
other cities of the same class.

That uniformity was not the object is evidenced by the
fact that special charters in existence when the constitution
was adopted were, by a further provision of § 10, art. 11,
*supra*, permitted to continue in operation, and cities of more
than 20,000 population were, by the same section, authorized
to frame their own charters.    Moreover, there is nothing in
the constitution or in any statute of this state providing
that, when a municipality organized as a city of the third
class may attain a population of 10,000 or more, it shall *ipso
facto* become a city of the second class.    On the contrary, it
will remain a city of the third class until by proper procedure
and vote it decides to advance itself to, and become organized
as, a city of higher grade.    Thus, it may be seen that cities

of the third class may progress to more than 10,000 popu-
lation, without changing their organization or classification.
It is evident that all laws pertaining to municipalities in this
state must be general in their terms.  By the enactment of
this statute, which is a general law, the legislature has cre-
ated another class of cities in proportion to population, for
the purpose of authorizing their incorporation and organ-
izing under a commission form of government, to be adopted
by them at their option.  We find no constitutional inhibi-
tion against its enactment or against the creation of such a
class of cities.  Notwithstanding appellant's contention to
the contrary, we conclude the act in no way seeks to amend or
repeal any statute creating cities of the second and third
classes.  It only creates a new classification of all cities having
the population of cities of the second class and a portion of
cities of the third class, without repealing or destroying their
original classification.  The mere fact that the constitution
requires the classification of municipalities to be according to
population does not further restrict the legislature as to the
manner in which they shall be made or created. This constitu-
tional provision is an authorization and not a limitation.  It
was undoubtedly adopted to avoid any contention that a
classification according to population would be an arbitrary
one.  Many courts have held that an act general in its terms
and operation, applicable to certain cities which may con-
stitute a portion only of a class theretofore existing, creates
a new classification in itself, and is valid as such.  *Eckerson
v. Des Moines,* 137 Iowa 452, 115 N. W. 177; *Parker-Wash-
ington Co. v. Kansas City,* 73 Kan. 722, 85 Pac. 781; *State
ex rel. Jones v. Graham,* 16 Neb. 74, 19 N. W. 470; *McCar-
ter v. McKelvey,* 78 N. J. L. 3, 74 Atl. 316; *Boyd v. Mil-
waukee,* 92 Wis. 456, 66 N. W. 603.

The cases cited hold that statutes made applicable to cities
of certain population within a class theretofore organized
are valid, have uniform operation throughout the state, and
are not special laws; clearly recognizing that such acts of

themselves create a new class.   Under our constitution it is,
therefore, permissible for the legislature, after it has classi-
fied cities of the state, to create a class within such existing
classes, so long as it does so by general laws and according
to population.   In *Eckerson v. Des Moines, supra,* the su-
preme court of Iowa, in a well-considered and able opinion
which may be examined with much profit, sustained the con-
stitutionality of a law quite similar to the one now under con-
sideration.   The constitution of that state not only pro-
hibits special laws for cities, but also provides for uniform
operation throughout the state of all laws pertaining to mu-
nicipalities.   The legislature had theretofore classified cities
of the state as follows:

"Every municipal corporation now organized as a city of
the first class, or having a population of fifteen thousand or
over, shall be a city of the first class; every municipal cor-
poration now organized as a city of the second class, or hav-
ing a population of two thousand, but not exceeding fifteen
thousand, shall be a city of the second class, and every munic-
ipal corporation having a population of less than two thou-
sand shall be deemed a town."   Ann. Code of Iowa, 1897,
§ 638.

In 1907 the Iowa legislature passed an act to provide for
the government of certain cities and the adoption thereof by
special election.   Section 1 of this act provided:

"That any city of the first class, or with special charter,
now or hereafter having a population of 25,000 or over, as
shown by the last preceding state census, may become organ-
ized as a city under the provisions of this act by proceeding
as hereinafter provided."

It will be thus noted that Iowa cities of the first class hav-
ing a population of less than 25,000 were not included, and
that the act created a new class within a class previously ex-
isting and continued in existence.   Passing upon the validity
of this classification, the Iowa court said:

"As we have seen, a law intended to have application to a
class of municipalities is general, and it is not material that

the class to which the law is to have exclusive application is carved out of a class theretofore created and existing."

If a new classification can thus be created within a single class previously created, we are unable to understand why a new classification may not also be created as has been done by chapter 116 now under consideration, by including therein all cities of one class and a portion of the cities of another, the next lower class. Our conclusion is that the law is not local, private, or special; that it is general in its terms and application; that it is uniform in its operation throughout the state; that its classification is in no manner arbitrary; and that it is valid and constitutional.

Appellant further contends the act violates § 1, art. 2, of the state constitution, in that it is an unwarranted delegation of legislative power. The rule is well established that a statute does not delegate legislative power so long as it is complete in itself when it has passed the legislature and has been approved by the governor, even though it is left to some local body to determine whether and when it shall go into operation. Cooley, Const. Lim. (7th ed.), pp. 164-166; *State v. Storey*, 51 Wash. 630, 99 Pac. 878; *Cole v. Dorr*, 80 Kan. 251, 101 Pac. 1016, 22 L. R. A. (N. S.) 534; *Adams v. Beloit*, 105 Wis. 363, 81 N. W. 869, 47 L. R. A. 441; *State ex rel. Witter v. Forkner*, 94 Iowa 1, 62 N. W. 772, 28 L. R. A. 206; *Chicago Terminal Transfer R. Co. v. Greer*, 223 Ill. 104, 79 N. E. 46, 114 Am. St. 313; *State ex rel. Van Alstine v. Frear*, 142 Wis. 320, 125 N. W. 961.

Appellant further contends the act is invalid in that it violates that provision of § 10, art. 11, of the constitution which reads:

"Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a *general* election shall so determine. . . ."

Section 2 of chapter 116 (Laws 1911, p. 521), the act in question, provides that the mayor shall, upon a proper peti-

tion by proclamation, submit the question of organizing as a city under this act to a special election to be held at a time specified therein, and within sixty days after said petition is filed.    The city of Walla Walla is organized, and now exists, under a special charter granted by the territorial legislature prior to the adoption of the constitution.    Appellant argues that the constitutional provision last quoted was designed to preserve this city charter until such time as the electors of Walla Walla shall determine to organize under general laws; that the peremptory writ of mandate requires the mayor to call an election on July 10, the date of the city's general election; and that neither the mayor nor the trial court has power to change the election specifically declared by statute to be a special election into a general election to meet the requirements of the constitution.    We find no merit in this contention. Any election which is not regularly held for the election of officers or for some other purpose which shall come before the electors at regular fixed intervals is necessarily a special election.    Had the act in question merely provided for an election on the question of adopting the commission form of government, it would have been a special election.    Had it gone further and directed that a general election should be called, it would still be a special election.    Manifestly the word "special" is surplusage, and can be disregarded without affecting the validity or meaning of the statute.    Moreover the word "general," found in the constitutional provision quoted, does not in fact make general the election therein mentioned and authorized.    The framers of the constitution undoubtedly knew it would necessarily be a special election whatever it might be called.    Their manifest intention was not to require a general election on the subject itself, but to require that the result of such election should be determined, not by a mere majority vote on the question, but by the majority of the vote at a general election.    Chapter 116, Laws 1911, p. 521, does not fix the time for holding the election, further than to provide it shall be within sixty days from the

filing of the petition. When, as in this case, the petition was filed within sixty days prior to a general election, it became the duty of appellant and the trial court to call the election at such a time as would comply with the constitutional requirement. The relators undoubtedly prepared and filed their petition at the time they did with this exact purpose in view.

Section 4 of the act contains a provision which reads:

"All existing laws governing cities of the second class, or applicable thereto, not inconsistent with the provisions of this act, shall apply to and govern cities organized under this act."

Section 7 contains a provision which reads:

"And in all elections in such city the election precincts, voting places, method of conducting election, canvassing the votes and announcing the results shall be the same as by law provided for the election of officers in such cities, so far as the same are applicable and not inconsistent with the provisions of this act."

Appellant contends these provisions are invalid and violative of § 37, art. 2, of the constitution, which provides that:

"No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

And that they are also violative of § 38, art. 2, which provides:

"No amendments to any bill shall be allowed which shall change the scope and object of the bill."

The sections cited have no application. The act in question is complete in itself and in no manner attempts or assumes to amend, modify, or change any preexisting law. At the time it was passed no existing law pertaining to cities of the second class was before the legislature in the form of a bill, for consideration or amendment. On the contrary, all such laws were permitted to remain intact and undisturbed. Counsel for appellant, in support of their position, cite *Cop-*

*land v. Pirie,* 26 Wash. 481, 67 Pac. 227, 90 Am. St. 769, in which this court held unconstitutional an act relating to exemptions of personal property. A criticism of this case by Rudkin, C. J., in the subsequent case of *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 Pac. 316, will be hereinafter quoted. It cannot be any objection to this law that, in order to ascertain powers granted to cities organized under it, it becomes necessary to refer to existing laws relative to cities of the second class. The courts have repeatedly recognized the validity of reference statutes, a common and approved method of legislation in the absence of constitutional restrictions. 36 Cyc. 969, 970; Lewis' Sutherland, Stat. Constr. (2d ed.), §§ 405-407; *Spokane Grain & Fuel Co. v. Lyttaker, supra; Chelan County v. Navarre,* 38 Wash. 684, 80 Pac. 845; *Savage v. Wallace,* 165 Ala. 572, 51 South. 605; *Phoenix Assurance Co. v. Fire Dept.,* 117 Ala. 631, 23 South. 843, 42 L. R. A. 468.

In *Spokane Grain & Fuel Co. v. Lyttaker, supra,* Rudkin, C. J., speaking for this court, said:

"Nearly every legislative act of a general nature changes or modifies some existing statute, either directly or by implication, and as said by the court in *Ex parte Pollard, supra,* 'Whether an amendatory or an original act should be employed is a matter of legislative judgment and discretion which the courts cannot control.' The purpose of the constitutional provision was to protect the members of the legislature and the public against fraud and deception; not to trammel or hamper the legislature in the enactment of laws. . . . So long as a legislative act is complete in itself, and has a sufficient title, it satisfies the requirements of the constitution, whether it contains much or little. The legislature may embody all legislation relating to a given subject in a single act, or it may cover the subject by a succession of acts. This is entirely a matter of legislative discretion over which we can assume no control. . . . The appellants rely largely on the case of *Copland v. Pirie,* 26 Wash. 481, 67 Pac. 227, 90 Am. St. 769, and it must be conceded that their contention finds support in that decision. It was there held that the act of 1897 (Laws 1897, p. 93), relating to ex-

emptions of personal property was amendatory of section 486 of Hill's Statutes and Codes (Rem. & Bal. Code, § 563), and was therefore void, because not enacted according to the requirements of the constitution. If the act of 1897 was strictly amendatory in its character, the conclusion of the court was unavoidable, but the legislature in its wisdom did not see fit to enact it in that form, and it may well be doubted whether the court did not go too far in limiting and restricting the legislature as to the mode it might pursue in the enactment of laws. *Lockhart v. City of Troy, supra.* In the course of its opinion in the case cited this court said: 'In construing similar constitutional provisions the courts seem generally to have held that this requirement does not apply to supplemental acts not in any way modifying or altering the original act, nor to those merely adding sections to an existing act, nor to acts complete in themselves, not purporting to be amendatory, but which by implication amends other legislation on the same subject.' The rule there stated is no doubt the correct one, but was not the act of 1897 a supplementary act within the meaning of that rule? It in no wise altered or amended existing laws, but simply increased the existing exemptions, by adding a new exemption of a different kind. The decision in *Copland v. Pirie* was controlled largely by the decision of the United States district court for this district, in *In re Beulow*, 98 Fed. 86, construing the same statute. That court proceeded upon the theory that 'The new act is not complete, but refers to a prior statute, which is changed, but not repealed by the new act, so that the full declaration of the legislative will on the subject can only be ascertained by reading both statutes, the very obscurity and the tendency to confusion will be found which constitutes the vice prohibited by this section of the constitution.' But how often must we look to two or more acts to ascertain the full declaration of the legislative will? No one will for a moment doubt the power of the legislature to exempt homesteads by one act, household goods by another, farming implements by a third, and so on; yet the full declaration of the legislative will on the subject of exemptions could only be gathered by referring to these several acts. Followed to its logical conclusion, this argument would compel the legislature to embody in a single enactment, or in amendments thereto, all legislation relating to a single

subject. Such was not the object or purpose of the provision in question. So long as a legislative act is complete in itself and does not tend to mislead or deceive, it is not violative of the constitution."

In *Savage v. Wallace, supra,* the supreme court of Alabama said:

"There is a class of statutes, known as 'reference statutes,' which impinge upon no constitutional limitation. They are statutes in form original, and in themselves intelligible and complete—'statutes which refer to, and by reference adopt, wholly or partially, preexisting statutes. In the construction of such statutes the statute referred to is treated ·and considered as if it were incorporated into and formed a part of that which makes the reference. The two statutes coexist as separate and distinct legislative enactments, each having its appointed sphere of action; and the alteration, change, or repeal of the one does not operate upon or affect the other.'—*Phoenix Assurance Co. v. Fire Department,* 117 Ala. 631, 23 South. 483, 42 L. R. A. 468. Such statutes are not strictly amendatory or revisory in character, and are not obnoxious to the constitutional provision which forbids a law to be revised, amended, or the provisions thereof to be extended or conferred by reference to its title only. That prohibition is directed against the practice of amending or revising laws by additions to, or other alterations, which without the presence of the original act are usually unintelligible. *Ex parte Pollard,* 40 Ala. 100; *State v. Rogers,* 107 Ala. 444, 19 South. 909, 32 L. R. A. 520."

Other objections which we cannot sustain are urged; but as they do not necessarily involve the validity of the statute, or affect the question whether the peremptory writ should issue, we will not lengthen this opinion with their consideration.

The judgment is affirmed.

DUNBAR, C. J., PARKER, ELLIS, MOUNT, FULLERTON, and MORRIS, JJ., concur.