[No. 16581. *En Banc.* August 25, 1921.]

THE STATE OF WASHINGTON, *on the Relation of the City of Yakima, Plaintiff*, v. C. W. CLAUSEN, *as State Auditor, Respondent.*[1]

MUNICIPAL CORPORATIONS (9)—CLASSIFICATION OF CITIES—ADOPTION OF COMMISSION FORM OF GOVERNMENT—STATUTES—CONSTRUCTION. Under Rem. Code, §§ 7670-1 to 7670-24, providing that cities having a population from 2,500 to 20,000, on adopting a commission form of government, should have the powers of, and be governed by the laws applicable to, second-class cities, a third-class city adopting the commission government did not thereby become a city of the second class, though entitled to such rank by reason of population; since a city can advance from one classification to another only by taking the steps provided in Rem. Code, § 7482 *et seq.*

Application filed in the supreme court May 26, 1921, for a writ of mandamus to compel the state auditor to issue warrants to a city in a certain amount against the primary highway maintenance fund. Denied.

*Thos. E. Grady* (*Grady, Shumate & Velikanje,* of counsel), for relator.

*The Attorney General* and *Nat U. Brown,* for respondent.

MACKINTOSH, J.—In July, 1911, Yakima was a city of the third class, although it possessed sufficient population to have entitled it to classification as a city of the second class, had it complied with the law in rela-

[1]Reported in 200 Pac. 311.

tion to the raising of the classification of cities. In that month it organized itself under the commission form of government, in pursuance of the provisions of the Laws of 1911, ch. 116, p. 521 (§§ 7670-1 to 7670-24, Rem. Code), and ever since that time has been operating under that form of government.

The act just referred to provides that any city in the state having a population of 2,500 and less than 20,000 may organize under the provisions of the act, and that cities so organized shall have applicable to them all the laws governing cities of the second class not inconsistent with the provisions of the act. The act also provided that cities organized under the act shall have the powers of cities of the second class, and the act further provided, in the event a city decided to abandon the commission form of government, that, upon such abandonment, the city shall take classification according to its then population. Laws of 1921, ch. 96, p. 251, creating a "Primary Highway Maintenance Fund," provides that the state shall pay to cities of the first and second class in which there are streets forming a part of a primary state highway a sum equal to $500 per mile for each mile of such highway, and that cities of the third and fourth class shall receive $300 per mile. The state auditor, claiming that Yakima is a city of the third class, has remitted $300 per mile; Yakima claims to be a city of the second class, and that it should receive $500 per mile. This action is one in mandamus to compel the payment of the larger amount. The question, therefore, is whether Yakima is a city of the second or third class.

Sections 7482 to 7488, Rem. Code, had not been followed at the time that Yakima adopted the commission form of government, and although, as has been said, it had a population sufficient to allow it to avail itself

of the statutory procedure to. raise its classification to that of the second class, it had done nothing in that regard. It is relator's contention that, although it had not availed itself of the statutory rights conferred by these sections, by the adoption of the commission form of government, it automatically advanced from the third class to the second class. Section 10, art. 11, of the constitution provides that the legislature, by general law, can prescribe the classification of cities and towns in proportion to their populations, and in pursuance of that constitutional decree, the legislature, in § 7479, Rem. Code, made the classification so that cities having a population of more than 10,000 and less than 20,000 shall be known as those of the second class, and cities of more than 1,500 and less than 10,000 shall be cities of the third class. To advance from one class to another, the method provided in § 7482 *et seq.* must be followed. As we said in *State ex rel. Sylvester v. Superior Court,* 64 Wash. 594, 117 Pac. 487, cities must comply with these statutory requirements in order to attain the advanced classification.

The law of 1911, which allows cities of the second class and a certain portion of those of the third class to adopt a commission form of government, did not create a separate and distinct classification of cities, but merely directs that third class cities having a population of 2,500 and more, and second-class cities, could adopt that form of government, and when they so adopted it they should have the powers, and be governed by, the general laws applicable to second-class cities. The effect of the act is merely to create a class within a class, otherwise the act would be in conflict with the constitution, which classifies cities according to population. The prescription by the act of powers and limitations referred only to the method of admin-

istering the form of government provided for in the act, and did not re-classify all cities that accept that form of government, but left them in the classification in which they were at the time they took advantage of the 1911 law. In other words, Yakima is still a city of the third class, operating under a commission form of government, and, by act of the legislature, that form of government is administered as is the government of cities of the second class, but as to all other matters which do not relate to its form of government, it retains the classification it had at the time it became a commission governed city. If it desires to advance itself from the third to the second class, the statutory procedure is open to it to do so, having the requisite population to make the advance. That statutory procedure is available no matter what form of government it may be operating under. To hold otherwise would be to say that cities whose population is less than that specified as necessary under the general laws to make them cities of the second class become cities of that class by adopting the commission government. This would result in the possibility of cities lying side by side, one of them with a population of 2,500, being classified as a second-class city, and its neighbor, with a population of 9,999, remaining a third-class city, because of different forms of government, thus violating the intent of the constitution that cities should be classified according to population.

In the absence of an express declaration by the legislature of its intention to make commission governed cities, cities of the second class, even though the constitution did not inhibit such classification, we are powerless to so interpret the act of 1911. This question has been once before presented to this court in the case of *State ex rel. Hunt v. Tausick,* 64 Wash. 69, 116 Pac. 651, where we said:

''That uniformity was not the object is evidenced by the fact that special charters in existence when the constitution was adopted were, by a further provision of § 10, art. 11, *supra,* permitted to continue in operation, and cities of more than 20,000 population were, by the same section, authorized to frame their own charters. Moreover, there is nothing in the constitution or in any statute of this state providing that, when a municipality organized as a city of the third class may attain a population of 10,000 or more, it shall *ipso facto* become a city of the second class. On the contrary, it will remain a city of the third class until by proper procedure and vote it decides to advance itself to, and become organized as, a city of higher grade. Thus, it may be seen that cities of the third class may progress to more than 10,000 population, without changing their organization or classification. It is evident that all laws pertaining to municipalities in this state must be general in their terms. By the enactment of this statute which is a general law, the legislature has created another class of cities in proportion to population, for the purpose of authorizing their incorporation and organizing under a commission form of government, to be adopted by them at their option. We find no constitutional inhibition against its enactment or against the creation of such a class of cities. Notwithstanding appellant's contention to the contrary, we conclude the act in no way seeks to amend or repeal any statute creating cities of the second and third classes. It only creates a new classification of all cities having the population of cities of the second class and a portion of cities of the third class, without repealing or destroying their original classification.''

When the act of 1921 referred to payments to cities of the different classes, it applied to the classification of the cities of the state according to their classification as regards population, and not as to the form of government under which they might be operating. The state auditor was therefore correct in apportioning to Yakima on the basis of its being a city of the third

class.   It will be entitled to the larger amount when it makes use of the statutory machinery to advance to the classification to which its population entitles it. The writ is denied.

PARKER, C. J., BRIDGES, FULLERTON, MAIN, HOLCOMB, MITCHELL, and TOLMAN, JJ., concur.