30 So.2d 14

## OPINION BY THE JUSTICES.

### No. 72.

Supreme Court of Alabama.
April 2, 1947.

March 26, 1947

The Honorable Chief Justice and
Associate Justices of the
Supreme Court of Alabama,
Judicial Department
Montgomery, Alabama.
Gentlemen:

Important constitutional questions have arisen in connection with Act No. 164, S. 213, approved June 17, 1943, General Acts of 1943, Regular Session, p. 154, which said Act empowers the governing body of every state department, county, municipality, board, commission, or subdivision of the State of Alabama to contribute to the premiums on group life insurance and group hospitalization insurance on the lives of such of its officers or employees who desire to take out such insurance.

Under Title 13, Section 34, Code of Alabama 1940, I respectfully request your written opinion as to the following constitutional questions:

1. Is said Act violative of Section 68 of the Constitution of Alabama of 1901, in that it is an attempt by the Legislature to grant to the several counties and municipalities of the State the power to increase the compensation, fees, or allowance of public officers, servants, or employees of such counties or municipalities, after serv-

ice has been rendered by such officers, servants, or employees?

2. If the provisions of said Act are put into effect, would it constitute an increase in the fees and compensation of public officers of the county or municipality during their term of office in violation of said Section 68 of the Constitution of Alabama of 1901?

3. Is said Act violative of Section 94 of the Constitution of Alabama of 1901, in that it is an attempt by the Legislature to authorize the several counties and municipalities or other subdivisions of the State to lend their credit or to grant public money in aid of individuals?

4. If the provisions of said Act are carried out, would it have the effect of increasing the compensation of persons holding civil offices or profit under this State or any county or municipality thereof, in violation of Section 281 of the Constitution of Alabama of 1901?

Respectfully submitted,
(Signed)   James E. Folsom
Governor of Alabama.

Honorable James E. Folsom,
Governor of Alabama,
State Capitol,
Montgomery, Alabama.
Dear Sir:

We are in receipt of your inquiry as to whether or not the Act of the Legislature of Alabama approved June 17, 1943, General Acts, Regular Session, 1943, p. 154, Code 1940, Tit. 28, §§ 347–351, is violative of either §§ 68, 94 or 281 of the Constitution of our State.

The Act inquired about authorizes the governing bodies of every State department, county, municipality, board, commission or subdivision of the State to adopt and carry into effect a system of group life insurance and group hospitalization insurance, or either, for the benefit of such of their officers and employees as shall or may elect to accept the same and who have authorized in writing the governing body to make deductions from their compensation as therein provided. It is further stipulated in the Act that the said governing bodies shall have the authority to purchase group policies of life insurance and group hos-

pitalization, or either, for the benefit of such officers and employees as shall elect to be insured from an insurer admitted to transact business in this State. There is a proviso, however, that not less than seventy-five per centum of the officers and employees of any particular department or group such as a county, municipality, board, commission or subdivision, shall elect to be insured. As we interpret this proviso, it is to the effect that no such group insurance shall be effective unless the above noted per centum of the officers and employees eligible therefor voluntarily agree to accept the benefits of the plan.

In Section 3 of the Act, Code 1940, Tit. 28, § 349, there is a provision that the said governing bodies shall have authority to pay such part of the premium for such insurance as the governing body of the department shall determine, and deduct that part of the premium that is to be paid by the officer or employee from the salaries or wages of such officer or employee as authorized by him and to pay such deductions, together with the part to be paid by such governing body, if any, to the insurer issuing such policy for the premium thereon.

It is, of course, the authorization of the governing bodies to pay any part of this premium which presents the only controversial question arising from the Act considered in the light of the constitutional provisions above noted. But, we are persuaded that the Act does not contravene any of these constitutional restrictions.

In Cobbs, City Treas., v. Home Ins. Co., 18 Ala.App. 206, 91 So. 627, the opinion of the Court of Appeals, reviewed and left undisturbed by this court (In re Cobbs, 207 Ala. 712, 91 So. 922) was to the effect that creation of a firemen's pension fund and the machinery for carrying out its provisions is governmental and not violative of either §§ 68 or 94 of our Constitution. The holding also was that firemen are not officers within the meaning of §§ 97 and 98 of the Constitution of 1901. Phoenix Assur. Co. of London v. Fire Dept. City of Montgomery, 117 Ala. 631, 23 So. 843, 42 L.R.A. 468.

A reference to the authorities found noted in 40 Am.Jur. 971, 977, discloses that the Cobbs case, supra, is supported by the decided weight of authorities. See also 43 C.J. 842; 46 C.J. 1018; Bowler v. Nagel, 228 Mich. 434, 200 N.W. 258, 37 A.L.R. 1162; Talbott v. Independent School Dist., 230 Iowa 949, 299 N.W. 556, 137 A.L.R. 249; State ex rel. Sena v. Trujillo, 46 N.M. 361, 129 P.2d 329, 142 A.L.R. 938.

Coming more closely to the question here presented concerning group insurance, and the right of the Legislature to authorize governing bodies to participate therein, out of the public funds for the better protection of the officers and employees in several of the state departments, counties and municipalities, the New Mexico court in the case of Nohl v. Board of Education of the City of Albuquerque, 27 N.M. 232, 199 P. 373, 16 A.L.R. 1085, reached the conclusion that the Board of Education of that city had the right to share in the expenditures for the securing of group insurance for the teachers in order to procure a better class of teachers and prevent frequent changes in the teaching force; that this was desirable and conducive to the proper conduct of the public schools, and that, therefore, the expenditure of these funds for such insurance was for a public purpose. The opinion calls attention to the march of progress in thought as to governmental affairs, in keeping with the statement of this court in Re Opinion of the Justices, 247 Ala. 66, 22 So. 2d 521. We make reference to this authority not by way of any definite approval of the holding, as in that case it is extremely doubtful whether the broad language of the Legislature conferring authority upon the city and school boards was sufficient to justify this expenditure. We have in this case no such question, as the Act is very definite in that respect. There is cited in the note the case of People ex rel. Terbush & Powell v. Dibble, Sup., 1921, 189 N.Y.S. 29, where authority of the city to participate in such group insurance was denied. But, that case discloses that there was no legislative authority for such action, and as we view it, the decision was rested upon that ground.

The New Mexico court again considered the right of a city to participate in group insurance on the lives of the employees of the city in Bowers v. City of Albuquerque, 27 N.M. 291, 200 P. 421. The authority

was sustained upon the Nohl case, supra, and was further sustained against the statute which provided against an increase in the salary of an officer during the term for which he was appointed. This decision points out that the group policy in question must be held to cover all officers and employees of the city except those with a fixed term. This reasoning would be applicable here to Section 281 of our Constitution if the Act be considered as in any wise embracing an increase in compensation. But, that is a matter to be determined in each individual case, and it may be assumed that any such officer with a fixed and unexpired term would not during such term, perhaps, venture to join any such group insurance as, of course, under the Act such participation is entirely voluntary on the part of any officer or employee.

The Tennessee court in State ex rel. Thompson v. City of Memphis, 147 Tenn. 658, 251 S.W. 46, 27 A.L.R. 1257, concluded that a city having the power to increase the wages of its employees, may take out group insurance for their benefit, if it will receive better service by so doing, without violating the constitutional provisions forbidding the appropriation of public funds for private purposes.

The California court in People v. Standard Acc. Ins. Co., 42 Cal.App.2d 409, 108 P.2d 923, also considered this question of insurance for state employees, or subdivisions thereof, and reached the conclusion that the expenditure of the money was for a public and not a private purpose.

In Mayor and Aldermen of City of Vicksburg v. Crichlow, 196 Miss. 259, 16 So.2d 749, the Supreme Court of Mississippi upheld the statute concerning the retirement benefits for the firemen and policemen as not gratuities, and as not extra compensation but being prospective it serves a beneficent and useful governmental function in its propensity for stimulating and rewarding faithful public services in hazardous employment.

■ As to the Act in question we are inclined to the conclusion that the benefits received from group insurance therein provided may be considered as some increase in compensation. So considered, officers who have a fixed and unexpired term would not, during such term, be treated as within the group entitled to its benefits; but as to all others whose compensation may be increased, we are of the opinion that the Act looking, as it does, to the future is not violative of either §§ 68, 94 or 281 of the Constitution.

Answering specifically, therefore, your inquiries, we make the following responses:

As to inquiries 1 and 2, the Act is not violative of § 68 of our Constitution.

As to inquiry 3, the Act is not violative of § 94 of our Constitution.

■ Concerning inquiry 4, the Act is not violative of § 281 of the Constitution, since it will not be assumed that officers with a fixed and unexpired term, and whose compensation cannot be increased during such term, will during such term seek to participate, or will be governed by the terms of the Act.

We feel impelled to state, however, lest we be misunderstood, that though the Act may not be violative of the provisions of the Constitution above outlined, yet, we entertain the view that it is so uncertain and indefinite as to be unenforceable. We have concluded, therefore, though it is beyond the scope of your specific inquiry, to state our opinion in that respect.

■■ It is a well recognized rule of law that in the enactment of statutes reasonable precision is required. Indeed, one of the prime requisites of any statute is certainty, and legislative enactment may be declared by the courts to be inoperative and void for uncertainty in meaning. This power of the court may be exercised where the statute is so incomplete, so conflicting or so vague and indefinite, that the statute cannot be executed and the court is unable by the application of law and accepted rules of construction to determine what the legislature intended by any reasonable degree of certainty. Many illustrative cases are cited in the note to the text 50 Am.Jur. § 472. Like observations are to be found in 59 C.J. 601.

In the recent case of Norton v. Lusk, 248 Ala. 110, 26 So.2d 849, reference is

made to the necessity of a standard for guidance as to administrative bodies.

We have among our decisions a number of illustrative cases concerning acts which were unenforceable for uncertainty and indefiniteness. Among these we may cite: In re Opinion of the Justices, 242 Ala. 57, 4 So.2d 654; Carter v. State, 31 Ala.App. 17, 11 So.2d 766; Standard Oil Co. v. State, 178 Ala. 400, 59 So. 667; Pendley v. Commissioners' Court of Fayette County, 185 Ala. 523, 64 So. 592, wherein is cited Savage v. Wallace, 165 Ala. 572, 51 So. 605; 18 Ala.Dig., Pocket Part, Statutes, ☞ 47, 49.

■ Applying the above noted principle to the Act in question, we are of the view that it lacks in reasonable precision, and is so uncertain and indefinite as to render it inoperative. From its terms the legislative intent, in our opinion, cannot be ascertained. In the first place, we find some difficulty in determining what the Legislature intended by the use of the expression: "Governing body of every state department." Perhaps, in some instances such governing bodies would be ascertainable, but in others it would be wholly uncertain. What, for instance, is the governing body of the judicial department of our State? If the Chief Justice or the entire membership of the Supreme Court, how far would extend the authority under this Act? Would all the circuit judges and their appointees be included? This but serves as an illustration of uncertainty inherent in the Act. The Act also applies to every board, commission or subdivision of the State. The institutions of learning maintained by the State are agencies of the State, as well as the institutions for the mental deficients, and, indeed, many other agencies unnecessary to mention. It is uncertain whether or not the Act is intended to apply to all boards of education or to all institutions such as we have indicated.

The Act further gives to the governing bodies unbridled discretion not only as to the amount of insurance to be carried, but also as to the per centum of the premium to be paid out of the public funds. With such uncertainty it is difficult to see how appropriations of public monies could be so allocated as to meet the budget plan as found in our Constitution and statutes. Not only so, but did the Legislature intend that there should be no uniformity in regard to this all important matter? Shall one department pay practically the entire premium and fix a large and desirable insurance, both as to life and hospitalization, while another department in the exercise of unbridled discretion shall fix a much smaller amount to be paid for premiums and a much less coverage and undesirable insurance? Did the Legislature intend any such inequality in the administration of this Act? Indeed, it is a generally accepted rule that an intent to discriminate unjustly between different cases of the same kind is not to be ascribed to the lawmaking body. 50 Am.Jur. 380. And yet this Act would in effect countenance such arbitrary discrimination.

Some of these difficulties are applicable to cities and counties as well as to State departments and subdivisions of the State. As to the governing bodies of municipalities and counties, however, there would be little difficulty in ascertaining such governing bodies. But, this is not true as to the general statement of governing bodies of every State department as well as every subdivision of the State.

The Act must be considered as a whole, and so considered, we are of the opinion that it was clearly not the legislative intent to give such authority to cities and counties without relation to employees of the State. The indefiniteness and uncertainty, therefore, as to the matters we have mentioned suffice, in our judgment, to render the entire Act unenforceable.

As we have observed, we have felt impelled to express these views in view of the importance of the question. We have made these observations to the end that the Legislature, if it sees fit and so desires, may reconsider this legislation in the light of these deficiencies, and in order to prevent any misunderstanding of the opinion

which ·we have rendered concerning the constitutional questions set out above.

Respectfully submitted,

(signed) LUCIEN D. GARDNER
Chief Justice

(signed) JOEL B. BROWN
Associate Justice

(signed) ARTHUR B. FOSTER
Associate Justice

(signed) J. ED. LIVINGSTON
Associate Justice

(signed) THOMAS S. LAWSON
Associate Justice

(signed) ROBERT T. SIMPSON
Associate Justice

(signed) DAVIS F. STAKELY
Associate Justice