# *Ex parte* Plowman.

## *Prohibition.*

1. *Laws respecting public rights; how construed.*—A law respecting public rights and interests should be liberally construed, so as to make it effective against the evil it was intended to abate, where it can be done without depriving any individual of his just rights.

2. *Rev. Code, § 178 of, to what applies.*—Section 178 of the Revised Code, which provides that when a requisition is made of certain designated officials for an additional bond, such bond shall be "in the same penalty, and payable and conditioned as the original bond," applies only to bonds declared insufficient because the sureties are not worth the penalty of the bond. It has no reference to cases where the original bond was for an insufficient penalty, defective in form, or otherwise insufficient.

3. *"Act to secure good and sufficient sureties upon bonds of county officers;" what does not repeal.*—"The act to secure good and sufficient sureties upon the bonds of county officers," approved March 17th, 1875, is merely supplemental to the provisions on the same subject in the Revised Code, and does not repeal or supersede them; it is still the duty of the grand jury to examine and report upon the sufficiency and correctness of the bonds of county officers.

4. *Amount of penalty of official bond; who determines.*—The officer whose duty it is to approve the bonds of county officers, is by law the arbiter as to the amount of their penalty; and the recommendation of the grand jury in that respect, although valuable as information, cannot control the judgment of the officer.

5. *Same.*—Although such a recommendation as to the amount of the penalty is not controlling, the judge may in his discretion act on it, and require bond in such penalty as he may deem advisable; and upon the making of such report, if not before, the judge is invested with as full jurisdiction over the amount of the bond as he had upon the officer's first entrance into office.

6. *Insufficient penalty; when bond required on account of, what should show.*—Where the circuit judge, acting upon the recommendation of a grand jury, that the bond of a county official is for an insufficient penalty, requires him to give another bond, the bond thus given should show by its recital that it was a new security for an additional penalty, and not a mere additional security for the penalty of the former bond.

Motion for prohibition to restrain the circuit judge of the 10th judicial circuit from certifying to the Governor a vacancy in the office of probate judge of Talladega county, based upon the following state of facts:

[*Ex parte* Plowman.]

At the fall term, 1875, of the circuit court of Talladega, the grand jury made a report which contained the following statement and recommendation: "11th. We have taken great pains to examine into the sufficiency and solvency of the bonds of the several officers of the county, and beg leave to report them good in amount and security, except as follows: . . . . Bond of George P. Plowman as probate judge, or judge of the probate court, for $7,000, we deem greatly insufficient in amount, and recommend that he be required to give an additional bond with approved security in a sum not less than $8,000."

Thereupon the presiding judge (Hon. JOHN HENDERSON) issued a notice to the petitioner, Plowman, reciting the action of the grand jury, and requiring him, therefore, "to give an additional bond as judge of probate, in the same penalty, payable and conditioned as his first official bond."

Plowman appeared before the judge at the time and place mentioned in the notice, and moved the judge to quash the requisition, and desist from all further proceedings thereunder, on the grounds, in substance, that the amount of the probate judge's bond was beyond the jurisdiction of the grand jury; that the requisition was a departure from, and unauthorized by the report, and that the judge was without authority to make the requisition. In support of this motion it was shown that, at the general election in the year 1874, Plowman was duly elected judge of probate for the term of six years, was qualified, commissioned, gave bond in the penalty of seven thousand dollars, which was duly approved, and that under said bond he was then discharging the duties of the office.

The judge overruled the motion to quash, and thereupon petitioner craved *oyer* of the report or address of the grand jury and the requisition, and demurred upon substantially the same grounds as those urged in support of the motion to quash. The demurrer was also overruled.

Thereupon, without waiving any of his former objections, petitioner tendered the circuit judge for his approval an additional bond for seven thousand dollars, the same as the penalty of the first official bond; the "form, penalty and terms of the additional bond tendered for approval, being precisely such as were directed and approved by the circuit judge." The only objection to the additional bond thus tendered was, that the sureties on the additional bond, "whether considered with or without connection with the sureties on the first official bond, were not solvent for the amount mentioned in said bonds respectively." The evi-

[*Ex parte* Plowman.]

dence established that the property of the sureties upon the additional bond, located in Talladega county, (without reference to property elsewhere) over and above exemptions and liabilities,"was not worth seven thousand dollars, the penalty of said bonds respectively, but that such property of the sureties on both bonds, and situate in Talladega county, over and above liabilities and exemptions, was worth more than seven thousand dollars."

Thereupon the bill of exceptions, taken by petitioner, recites that the circuit judge "refused to approve said bond, and determined and decided to issue a certificate of vacancy in said office, unless the petitioner shall, without unnecessary delay, obtain from the supreme court, or a justice thereof, an order or writ restraining or prohibiting the issue of such certificate of vacancy."

Plowman embodied the foregoing facts in a sworn petition, addressed to the supreme court, "as well as to the chief justice and associate justices thereof," praying that a rule issue to the circuit judge commanding him to appear, on a day to be named, before the supreme court, and show cause why a writ of prohibition should not issue restraining and prohibiting him from certifying a vacancy in the office to the appointing power.

This petition was presented in vacation (Oct. 13th, 1875) to Chief Justice BRICKELL, who directed the clerk to issue a rule commanding the circuit judge to appear before the supreme court on the first Thursday of the next term, to show cause why a writ of prohibition should not issue as prayed, and further commanding him to desist from all proceedings on the requisition until the further order of the court.

The answer of the circuit judge set forth the action of the grand jury, the requisition of the additional bond, petitioner's failure to give it within· the time prescribed, and states that, unless otherwise directed, he will on that account certify a vacancy in the office of the judge of probate.

Upon the coming in of the answer the petitioner moved the court to make the rule absolute.

RICE, JONES & WILEY and LEWIS E. PARSONS, for petitioner.

JOHN T. HEFLIN, *contra*.

MANNING, J.—The Revised Code provides (§ 784) that "Before entering on the duties of his office each judge of

[*Ex parte* Plowman.]

probate must give bond, with security, to be approved, and for a sum not less than five thousand dollars, to be fixed by a judge of the supreme court, or of the circuit court, or a chancellor."

This bond must be made payable to the State "with such securities as the approving officer is satisfied are sufficient," and be conditioned faithfully to discharge the duties of such office during the time he continues therein or discharges any of the duties thereof (§ 157). By § 4094 it is made "the duty of the grand jury," among other things, "to examine into the condition of the bonds of all county officers with regard to their correctness and sufficiency, and to report upon the same."

The bonds in this section referred to are those of persons in office which have theretofore been taken, approved and filed. Report is to be made from time to time of "their correctness and sufficiency." This action of the grand jury is not intended to be an idle ceremony. *Lex neminem cogit ad vana seu inutilia.* It has an object. What else can this be than that, if any of the bonds are incorrect, the error shall be corrected? If any of them be in any respect insufficient, they shall be made sufficient. This is the manifest intention of the enactment. And the object is one of the highest public concern. It relates to the safe keeping of all the public moneys, amounting to an immense annual sum, and of all belonging to individuals which go into the hands of the officials of the several counties in this State, and whose duty it may be to take charge of or collect them. Into the hands of the tax collectors go all the revenues that are collected from the people of their respective counties for State or county purposes; without which revenues the organization of government could not be kept up, courts could not perform their functions, the laws be enforced, or life and property be protected. Sheriffs receive the moneys of the numerous persons who have to invoke the aid of the State through its courts to compel those who owe them to pay their debts, or wrong-doers to make reparation to them. And the judges of probate have charge of the estates, and often of large sums of money, belonging to the widows and orphans of persons deceased, and collect license moneys and other funds for public use. Therefore, it is quite as important that the bonds which these and other officials are required to execute before going into office shall be valid, sufficient in amount and supported by good and responsible sureties, after the principal obligors are in office, as before. And we cannot doubt that upon the report made by the

grand jury in respect to petitioner Plowman's bond, it was the duty of the circuit judge, under the enactments cited, to require of Plowman a new or additional bond which should make good the deficiency.

If the circuit judge has not authority to cause this to be done, no one else in the State has. To no other official has it been expressly and exclusively confided. Only he, or a judge of the supreme court, or a chancellor, has authority to approve the first official bond of a probate judge, and his authority to do so is equal to that of either of the others; while he is, besides, the judge of the court of which the grand jury is an organ, and in which and to which the report is made. Such a report, in our opinion, renews, if that be necessary, in the circuit judge, the same power and duty to require of the probate judge a new or additional bond, to supply the defect reported, as he had to require of him a good and sufficient first official bond, "before entering on the duties of his office."

This is our view of the law, without reference to the provisions of sections 174, 175, 176 and 177 of the Revised Code, which the counsel for petitioner insists are not applicable to this case, and are also superseded by the act of March 17th, 1875, entitled "An act to secure good and sufficient sureties on the bonds of county officers of this State."

Section 174 enacts that "any judge of probate, clerk of the circuit court, or any other officer whose official bond is required to be approved by a judge of the circuit court, must, upon the address of a majority of the grand jury of the county, . . . . . made in term time to the presiding judge of the circuit court, . . . . . . . . be required by such presiding judge, or in vacation by a judge of the circuit, to give an additional bond."

Section 175 contains similar provisions respecting the bond of a sheriff, or any other officer whose bond is required to be approved by the judge of probate.

Section 176 directs how the requisition shall be made and served.

Section 177 is as follows: "Such officer must give such additional bond ten days after the day specified in such requisition, and failing so to do, he vacates his office, and the officer making the requisition must at once certify the same to the appointing power, by whom the vacancy must be filled."

The obvious effect of these plain provisions, counsel for petitioner argue, is nullified, in respect to the case now before us, by section 178, which says: "Such additional bond

[*Ex parte* Plowman.]

must be in the same penalty, and payable, conditioned, approved, and filed, in the same office as the first official bond."

The operation of this section, it is insisted, is to restrict the general terms of the preceding sections so as to make these applicable only to bonds that are defective on account of the insolvency of the sureties. Hence, if by mistake it should happen, as we are told once did happen in respect to a sheriff's bond in the same county, a first official bond is taken in the penal sum of ten dollars ($10), when it was intended by the officer approving it to be taken in the sum of $10,000, and the bond is reported by a grand jury as defective on that account; or if one is reported as *incorrect* in the condition of the bond, or in the manner in which it was made payable, and for that reason insufficient or invalid, the new or additional bond must be taken with the same insignificant penalty, or copied with the same errors, that made the first one an insufficient or even invalid security; or else no new or additional bond could be required at all.

We cannot agree with the learned counsel in this argument. A law respecting public rights and interests should be liberally construed, so as to make it effective against the evil it was intended to abate, when this can be done without depriving any individual of his just rights. Public offices are not the property of those who occupy them, but belong to the State. The incumbents are tenants of them under the State, and are entitled to remain such only upon complying with the conditions on which the laws of the State permit them to be held. And in reference to offices to which pertain duties of a ministerial and fiduciary character, one of these conditions is that the incumbent shall give security sufficient, according to the judgment of other officials on whom the duty of passing such judgment is devolved, to insure a faithful exercise of the office, or a just responsibility to those who may be injured by a failure so to exercise it. Bonds which were not made in proper form, or with an adequate penalty, or conditioned according to law, are not within the scope or intention of section 178. It must, therefore, be held applicable only to bonds which are insufficient because the sureties have not property enough to make them responsible in fact for the amount of the penalty—and not as repealing in part, or modifying, the preceding sections, so as to limit by implication their obvious and salutary purpose and effect. A decision similar in its nature to this was made by this court upon like considerations, in *Sprowl* v. *Lawrence*, (33 Ala. 674).

SUPREME COURT [Dec. Term

446

[*Ex parte* Plowman.]

The act of 1875 to secure good and sufficient sureties upon the bonds of county officers, which authorizes five freeholders of a county, upon oath taken and bond given similar to the oath taken and bond given in an attachment suit, to move that a county officer be required to give an additional sufficient official bond, is supplemental only to the provisions in the Revised Code on the same subject, and does not repeal or supersede them. It still remains the duty of the grand jury to examine and report on the correctness and sufficiency of the official bonds of county officers—a duty particularly appropriate to a body composed generally of citizens selected from every part of the county, who should be distinguished for intelligence and respectability, and who come together without previous agreement among themselves, and act under oath, as the grand inquest in respect to crimes and delinquencies within the county. A service so important, which individuals, from the desire to avoid making enemies, are generally reluctant to take upon themselves, and often would not if required by a bond to assume personal responsibility for what concerned them no more than it did the rest of their fellow citizens, would not be taken from such a body as the grand jury without explicit expressions of such an intention.

The substance of the grand jury's report was that the penalty in the official bond of petitioner was for a very inadequate sum. They had a right to intimate, and it was proper they should, how much larger in their opinion it ought to have been. And the plain inference is that they thought fifteen thousand dollars was as small an amount as he ought to be required to give security for. But the opinion of the grand jury, although valuable as information, does not control the judgment of the circuit judge. The law makes him the arbiter in respect to the penalty, and the exceptions taken to the requisition for not conforming in this particular to the report, were properly overruled.

There was no error in the rulings excepted to.

But the recital in the bond tendered of the action of the grand jury omits to show that their report was that the penalty of the first bond was insufficient in *amount.* This, and the fact that the new bond by order of the circuit judge was for the same sum and payable and conditioned as the original bond, would leave it open for litigation hereafter, whether, under sections 181 and 182 of the Revised Code, the additional bond was to be construed as augmenting the penalty, or only as furnishing additional sureties for the original penalty of $7,000, as the total amount for which all should be

responsible.  This was a defect in the bond tendered, and the petitioner having been elected by the people of his county to the office he occupies, and the questions of law involved having perhaps prevented his executing a sufficient additional bond, and the vacancy not having been certified to the governor, the circuit judge ought by a new requisition, issued and served according to the statute, to allow petitioner another opportunity of ten days within which to execute another bond for such sum as the judge may consider sufficient, and with such a recital in it as would prevent any misapprehension on the subject that the additional bond was taken because the original was for a sum that the grand jury reported and the judge considered to be inadequate.  On this point there ought to be no doubt.

The motion of petitioner is overruled and refused at his costs.