# Talladega Fertilizer & Mfg. Co. v. Farmers' Union Wharehouse Co.

### Assumpsit.

(Decided Nov. 14, 1911. 56 South. 595.)

1. *Agriculture; Fertilizer; Note; License.*—If the seller of fertilizers had no license to sell as required by Acts 1903, p. 78, a note given for the price of commercial fertilizer is void in the hands of the payee.

2. *Same; Burden of Proof.*—The burden is on the plaintiff to show that it procured the license required by Acts 1903, p. 78 where the plaintiff sues on a note given for the price of fertilizer, and the defendant pleads invalidity of consideration because of want of such license.

APPEAL from Walker Circuit Court.

Heard before Hon. JAMES J. RAY.

Action by the Talladega Fertilizer & Manufacturing Company against the Farmers' Union Warehouse Company on a promissory note given for the sale of commercial fertilizer. Judgment for defendant, and plaintiff appeals. Affirmed.

The plea referred to in the opinion is as follows: "That the consideration for the note sued on was commercial fertilizer sold by plaintiff to defendant, and at the time of said sale of said fertilizer the plaintiff had no license authorizing it to sell fertilizer, as required by the statutes of the state."

J. D. ACUFF and R. A. COONER, for appellant. The demurrer should have been sustained to the plea setting up want of license should have been sustained.—*Sunflower Lumber Co. v. Turner Supply Co.*, 48 South. 510. In passing the act requiring a license the Legislature left out the dastric features of Sec. 378, Code 1896, and

hence the contract was not void. In any event the burden of proof was on the defendant to show want of license.

POWELL & POWELL, and LEITH & GUNN, for appellee. No brief came to the Reporter.

DE GRAFFENRIED, J.—This suit was brought by the appellant against the appellee upon a promissory note, which the complaint alleges was executed by the appellee to appellant. The consideration of the note was commercial fertilizer sold by appellant to appellee, and at the time of the sale the appellant had failed to take out a license, as provided in section 2 of an act entitled "An act to regulate the registration, branding, selling, tagging, and analysis of commercial fertilizer, acid phosphates, fertilizing materials, and chemicals in the state of Alabama," approved March 3, 1903 (Laws 1903, p. 78). Section 1 of the act is as follows:

"Section 1. Be it enacted by the Legislature of Alabama, that all manufacturers' jobbers, and manipulators of commercial fertilizers and fertilizer materials to be used in the manufacture of the same, who may desire to sell or offer for sale in the state of Alabama, such fertilizers and fertilizer materials shall first file with the commissioner of agriculture of the state of Alabama, upon forms furnished by said commissioner, the name of each brand of fertilizer, acid phosphate, fertilizer materials, or chemicals which they may desire to sell in said state, either by themselves or their agents, together with the name and address of the manufacturer or manipulator, also the guaranteed analysis thereof, stating the sources from which the phosphoric acid, nitrogen and potash are derived; and, if the same fertilizer is sold under a different name or names, said

fact shall be so stated, and the different brands which are identical shall be named. Before offering any fertilizers, or acid phosphates, or fertilizer materials, in the state of Alabama for sale or exchange, they must first procure the license from the commissioner of agriculture and industries authorizing the person making the sale or exchange to deal therein."

Section 16 of the above act provides as follows: "Any person selling or offering for sale, any fertilizer or fertilizer materials without having first complied with any of the provisions of this act shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than $250.00 nor more than $1,000.00."

No broader opportunity for fraud and imposition could be offered to the commercial world than that which would be presented by an unrestricted field for the sale of commercial fertilizer. Only a trained chemist can determine, by analysis, whether a particular commercial fertilizer possesses those qualities which are necessary to give it value, and the average farmer is not a chemist. He must, out of necessity, accept the representations of the manufacturer or the seller as to the character and value of the article. Some plants require certain chemical elements to feed upon, while other plants require for their food entirely different chemical elements. It is therefore of importance for a farmer to know, not only that the commercial fertilizer sold him possesses the value claimed for it, but also what chemicals it contains and the various proportions in which they are mixed in the fertilizer. The subject was of too grave importance for the state of Alabama to permit such an article to be sold to its citizens without legislative restrictions and safeguards. While revenue to the state was an incident to the act, the real, substantial, moving spirit of the act, and of all its kin-

dred acts, was the protection of the public againnst fraud or imposition in the manufacture and sale of this one of the most important articles of our commerce. The fact that the fee for the license required under this act is only $1 emphasizes the truth of the proposition that the Legislature, in its enactment, was looking, not so much to the revenues of the state, as to the general welfare of the people of the state. It is the purpose of the act in question to present, through the commissioner of agriculture, to each purchaser of fertilizer an opportunity to have each separate parcel analyzed, and section 2 of the act above quoted was intended to furnish the secretary of agriculture the name of each person, firm, or corporation selling or offering for sale commercial fertilizer in Alabama, as a valuable aid in his efforts to fully meet the duties required of him by the act.

In the case of *Sunflower Lumber Company v. Turner Supply Company*, 158 Ala. 191, 48 South. 510, 132 Am. St. Rep. 20, the Supreme Court of Alabama quotes with approval: "If the object of the law had been to prohibit certain kinds of business or to regulate it, with a view to its effect on public morals, or public security, by limiting it in its extent, or the place where it is to be carried on, or the person who shall conduct it, or otherwise, in all such cases the law operates upon the business as well as the person. Revenue mainly in such cases is not the object. It is only incidental, or the means by which the law regulates or controls business." See, further, *Woods & Co. v. Armstrong*, 54 Ala. 150, 25 Am. Rep. 671; *Merriman & Co. v. Knox*, 99 Ala. 94, 11 South. 741.

We are therefore of the opinion that the plea of appellee, setting up that the note sued on was void because its consideration was certain commercial fertil-

izer sold appellee by appellant, and that appellant had not complied with the above statute and taken out the license required thereby, was not subject to appellant's demurrer.

Appellee having filed said plea, the burden was cast upon appellant to prove that it *had* complied with the law and had taken out the license required by the statute. It offered no proof on the subject, and the appellee was entitled to the general charge, which the court gave in its behalf, at its written request, to the jury.— *Edisto Phosphate Co. v. Stanford*, 112 Ala. 493, 20 South. 613.

The judgment of the court below is affirmed.

Affirmed.