# The State *v.* Lamar.

### *Habeas Corpus.*

(Decided Dec. 19, 1911.   Rehearing denied Feb. 8, 1912.
59 South. 737.)

1. *Statutes; Title; Scope.*—The provisions of section 5, General Acts 1907, p. 22 (S. S.), is a complement of and embraced in the title of the act, which is "to regulate the sale of cotton seed meal."

2. *Same; Repeal; Substitution.*—While repeal by implication is not favored, yet an act covering the whole subject and clearly showing that it was intended as a substitute, repeals the earlier statute, although the two are not in all respects repugnant.

3. *Same; Amendment; Setting Out.*—Section 5, General Acts 1907, p. 22 (S. S.), is not inoperative under the constitutional provision that no law shall be extended by reference to its title only, without being re-enacted and published at length.

4. *Same; Repeal.*—The provisions of section 45, Code 1907, that the term "fertilizer meal" as used in sections 24-48, Code 1907, shall not include cotton seed meal, is by implication repealed by section 5, General Acts 1907, p. 22 (S. S.).

5. *Agriculture; Fertilizers.*—Section 5, General Acts 1907, p. 22, necessarily brings cotton seed meal sold for fertilizers within the operation of the various sections of the civil and criminal code known

[The State v. Lamar.]

as the Fertilizer Law, since it includes the further requirement of section 24, Code 1907.

6. *Same; Tagging.*—The sale of cotton seed meal as fertilizer without its having been registered as provided by section 24, Code 1907, and tagged as provided by the fertilizer law, is a violation of section 6881, Code 1907.

APPEAL from Selma City Court.

Heard before Hon. J. W. MABRY.

Law Lamar, Jr., was arrested upon a warrant and affidavit charging a violation of the fertilizer law, whereupon, he brought habeas corpus, and from an order discharging him, the State appeals. Reversed and remanded.

In an opinion handed down by the Supreme Court on May 9, 1912, 59 South. 473, the judgment of the Court of Appeals was reversed and petitioner discharged.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. Section 5, General Acts 1907, p. 22, of necessity repeals so much of section 45, Code 1907, as excludes cotton seed meal from the term "fertilizer material" and it is there declared to be fertilizer material, and anyone selling it without registration and tag attached is punishable under section 6881, Code 1907. The statute is not amendatory in any sense, but is a reference statute, and should be sustained as such.—*Savage v. Wallace,* 165 Ala. 575. The act must be construed as originally adopted, as it was enacted after the enactment of the Code.—*State ex rel v. Miller,* 158 Ala. 59.

REESE & REESE, and JOHN R. TYSON, for appellee. The only authority for taxing meal is section 5 of the Acts of 1907, p. 22, and the wording of this section leaves nothing to be construed by intendment, implication or otherwise.—50 Ala. 365; 89 Ala. 161; 9 Port. 266. Re-

[The State v. Lamar.]

peal by implication is not favored.—76 Ala. 270; 76 Ala. 413; 160 Ala. 168; 23 Ala. 250; 33 Ala. 693; 51 South. 159. This statute must be strictly construed, and cannot be extended beyond its clearly expressed intention.—30 Ala. 591; 62 Ala. 197; 88 Ala. 110; 51 South. 159. The statute is not subject to the construction sought to be placed upon it by the state, as such construction would render the statute unconstitutional, under section 45 of the Constitution, and upon the principles declared in the case of *Bay Shell Road v. O'Donnell*, 87 Ala. 376, and as violative of section 70 of the Constitution.

DE GRAFFENRIED, J.—On the 27th day of September, 1911, Law Lamar, Jr., was arrested under a warrant issued by a justice of the peace of Dallas county, upon an affidavit charging that said Law Lamar, Jr., had been guilty of the offense of "selling cotton seed meal containing 7½ per cent. of ammonia for fertilizing purposes, without having attached to the package containing the same the tax tag (Alabama tax tag) prepared by the Commissioner of Agriculture and Industries." Thereupon the said Lamar filed his petition to the Honorable J. W. Mabry, judge of the city court of Selma, for a writ of habeas corpus, alleging that the said complaint and warrant charged no offense; that he was therefore illegally restrained of his liberty, and praying that he be discharged. Upon the final hearing of the matter, the said Lamar was ordered to be discharged from custody and from that order the state appeals.

By an act entitled "An act to regulate the sale of cotton seed meal," approved November 22, 1907 (General Acts of Alabama, Special Session 1907, page 20), it is provided as follows:

"Sec. 1. Be it enacted by the Legislature of Alabama, that any person, firm or corporation offering for sale any cotton seed meal in this state, shall be required to have tags attached to each bag with a guaranteed analysis of such meal printed thereon, and, in case of sale in bulk, to have such analysis set forth in the contract of sale stating the per cent. of ammonia, phosphoric acid and potash contained therein: Provided, that no cotton seed meal containing less than 7½ per cent. of ammonia shall be sold as fertilizers in this state."

"Section 3. That all cotton seed meal sold in Alabama shall be sampled and analyzed in the same manner as commercial fertilizers are sampled and analyzed, and that the certificate of the state chemist of any analysis which he may make shall be accepted as prima facie correct in all the courts of this state in the trial of any case arising under this act."

"Section 5. That all cotton seed meal containing 7½ per cent. of ammonia which is sold for fertilizing purposes must be registered as other brands of fertilizers under the fertilizer law."

"Section 7. That all laws and parts of laws in conflict with any of the provisions of this act be, and the same are hereby repealed."

It was the expressed purpose of the Legislature, in the above-quoted act, shown by section 5, to require the registration of all cotton seed meal intended to be sold for fertilizing purposes as other fertilizers are required to be registered under section 24 of the Code, which is the first section of article 2 of the Code, and which contains the legislative provisions regulating the sale of fertilizers.

It is manifest that the same reasons which impelled the Legislature to provide for the registration of "fertilizers and fertilizer materials," and which called into

[The State v. Lamar.]

existence the other sections of the Code, both civil and criminal, relating to the tagging and the sales of fertilizers required to be registered, also required that cotton seed meal, when sold for fertilizing purposes, should also be registered. The same opportunities for fraud and imposition exist when cotton seed meal is sold for fertilizing purposes as when any other commercial fertilizer is placed upon the market. As was said by this court in the case of *Talladega Fertilizer & Mfg. Co. v. Farmers' Union Warehouse Co.,* 2 Ala. App. 307, 56 South. 595: "Only a trained chemist can determine, by analysis, whether a particular commercial fertilizer possesses those qualities which are necessary to give it value, and the average farmer is not a chemist. * * * The subject was of too grave importance for the state of Alabama to permit such an article to be sold to its citizens without legislative restrictions and safeguards." The various Code provisions, civil and criminal, relating to the sale of fertilizers, furnish the restrictions and safeguards with which the Legislature has seen proper to surround the sale of commercial fertilizer; and, as cotton seed meal containing as much as $7\frac{1}{2}$ per cent. ammonia is permitted to be sold by the act "to regulate the sale of cotton seed meal"as other "fertilizers in the state" are sold, it was the duty of the law-makers, in permitting it to be so sold, to impose upon its sale, when made for fertilizing purposes, the same restrictions, both civil and criminal, that they had already imposed upon the sale of other fertilizers or fertilizer materials. The fact that cotton seed meal possesses valuable properties as a food product, as well as valuable properties as a fertilizer, cannot affect the subject. When sold for purposes other than for use as a fertilizer, it is manifest that the Code provision relating to the sale of commercial fertilizer has, and should have,

no applicability to cotton seed meal. When, however, it is sold as a fertilizer, for which purpose it is in constant use, section 5 of the act, above quoted, taken in connection with the other provisions of the act, was intended by the Legislature to furnish to the purchaser the same protection that the law had already furnished to him when making a purchase of any other kind of mixture advertised and sold solely for fertilizing purposes and required to be registered under section 24 of the Code. Many farmers make their own fertilizers by mixing in certain proportions different fertilizer materials bought by them for the purpose. Cotton seed meal is in constant use for such purpose; and, when a farmer uses cotton seed meal as one of the ingredients to be mixed with other ingredients in making a complete fertilizer, it is of as much importance for him to know the chemical analysis of the cotton seed meal as of the phosphates, potash, or other ingredients used by him.

1. The title of the act is "To regulate the sale of cotton seed meal," and it is therefore as comprehensive as the Legislature can make it. When the title of an act is expressed in general terms, every provision of the act which results, "as a complement of the thought contained in the general expression" is included in and authorized by it.—*Leslie v. Bracken*, 154 Ala. 151, 45 South. 841. A statute is not violative of the constitutional provision that "each law shall contain but one subject, which shall be clearly expressed in its title" (section 45), when each of its provisions is referable and cognate to the subject expressed in the title.—*Ballentyne v. Wickersham*, 75 Ala. 536; *Leslie v. Bracken*, 154 Ala. 151, 45 South. 841; *State ex rel. Meyer v. Greene, etc.*, 154 Ala. 249, 46 South. 268; *Winter v. Sayre*, 118 Ala. 35, 24 South. 89. We are therefore of the opinion that section 5 of the above act is referable

to and embraced in its title, and that neither that nor any other section of the act can be considered as violative of the above-quoted clause of the Constitution.

2. Appellee contends that, although, under the above section 5 of said act, it may be necessary to register said cotton seed meal when sold for fertilizer purposes, nevertheless the other provisions of the fertilizer law, civil and criminal, have no application to cotton seed meal when so sold. Section 45 of the Code declares that the term "fertilizer material," used in the above article 2 of the Code, shall not include cotton seed meal, etc. The argument is that, as the above-quoted section 5 of said act only requires said meal, when sold as a fertilizer, to be *registered,* and does not, in terms, declare that it shall be tagged, etc., therefore, if said meal, when sold as a fertilizer, is held to be subject to the tag tax provided for in article 2 of the Code, it follows that section 5 of said act, so far as cotton seed meal is concerned, repeals section 45 of the Code by *implication, and by implication only,* and that we must so hold. This may be true, and if the Legislature intended to repeal, and did in fact repeal, section 45 of the Code when it passed said act, in so far as cotton seed meal is concerned, when sold for fertilizing purposes, then it is our duty so to declare.

It may be accepted as true that the repeal of a statute by implication is not favored in law, and is only allowed when the two subjects are in irreconcilable conflict.—*Abernathy v. State,* 78 Ala. 411. "When a later act covers the whole subject of earlier acts and embraces new provisions and plainly shows that it was intended, not only as a substitute for the earlier acts, but to *cover the whole subject* then considered by the Legislature, and prescribes the only rules in respect thereto, it operates to repeal all former statutes relating to such

subject-matter, even if the former acts are not, in all respects, repugnant to the new act."—*Lemay v. Walker,* 62 Ala. 39; *Prowell v. Hasty,* 142 Ala. 80, 39 South. 164; *Edson v. State,* 134 Ala. 50, 32 South. 308; 36 Cyc. 1077, 1078. We have under consideration an act regulating all sales of cotton seed meal in Alabama, and we do not hesitate, therefore, under the above authorities, to hold that section 45 of the Code, in so far as it refers to cotton seed meal, when sold for fertilizer purposes, was repealed by this subsequent act.

3. It follows, therefore, from what we have above said, that cotton seed meal when sold for fertilizer purposes, must be registered as required in section 24 of the Code, unless section 5 of the act regulating the sale of cotton seed meal is inoperative because of the other constitutional provision that "no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length."

In the case of *State v. Rogers,* 107 Ala. 444, 19 South. 909, 32 L. R. A. 520, Brickell, C. J., quoting with approval the language of the Supreme Court of New York, in *People v. Banks,* 67 N. Y. 575, said: "It is not necessary, in order to avoid a conflict with this article of the Constitution, to re-enact general laws whenever it is necessary to resort to them to carry into effect a special statute. Such cases are not within the letter or spirit of the Constitution, or the mischief intended to be remedied. By such a reference, the general statute is not incorporated into or made a part of the special statute. The right is given, the duty declared, or burden imposed by the *special* statute; but the *enforcement* of the right or *duty,* and the final imposition of the bur-

den, are directed to be in the form and by the proced-ure given by the other and general laws of the state."

"The argument misapprehends the real character of the statute. It belongs to a distinct class of statutes, known or termed as reference statutes, not of infre-quent enactment; constitutional limitation not forbid-ding statutes which refer to, and by the reference adopt wholly or partially, pre-existing statutes. In the con-struction of such statutes, the statute referred to is treated and considered as if it were incorporated into and formed a part of that which makes the reference.— *Turney v. Wilton,* 36 Ill. 385; Sedgwick, Stat. & Con. L. p. 229; Sutherland, Stat. Constr. §§ 147, 257; *Knapp v. Brooklyn,* 97 N. Y. 520. The two statutes co-exist as separate, distinct, legislative enactments, each having its appointed sphere of action; and the alteration, change, or repeal of the one does not operate upon or af-fect the other."—*Phoenix Assurance Co. v. Montgom-ery Fire Department,* 117 Ala. 631, 23 South. 843, 42 L. R. A. 468; *Savage v. Wallace,* 165 Ala. 572, 51 South. 605.

At the time of the adoption of the act under consid-eration, there was in existence a general "fertilizer law," the same law which yet exists; and certainly, un-der the above authorities, in adopting section 5 of the said act, the Legislature made a valid requirement that all cotton seed meal sold for fertilizing purposes must be registered as other brands of fertilizer under the fer-tilizer law. In other words, in adopting the act ap-proved November 22, 1907, regulating the sale of cot-ton seed meal, the Legislature, by writing section 5 into the act, in fact wrote every requirement of section 24 of the Code into the act.—*Phoenix Assurance Co. v. Montgomery Fire Dept., supra; Savage v. Wallace, su-pra.*

4. It is therefore evident, from what we have above said, that cotton seed meal containing as much as 7½ per cent. of ammonia is, when sold for fertilizer purposes, a fertilizer or fertilizer material, within the letter and the intent of section 24 of the Code. This being true, it follows, out of necessity, that, upon the adoption of the act under consideration, such cotton seed meal, when sold for fertilizer purposes, passed under the operation of the various sections of the Code, civil and criminal, governing the sale of fertilizers and fertilizer materials, known as the fertilizer law, and under the operation of those criminal provisions of the Code providing punishment for the violation of any of the provisions of said fertilizer law.

As was said by counsel for the appellee in his able brief, "the meaning of the law is the law itself," and section 5 of the act under consideration is meaningless, unless it is construed in accordance with the views expressed in this opinion. "A law respecting public rights and interests should be liberally construed, so as to make it effective against the evil it was intended to abate, when this can be done without depriving any individual of his just rights"—is a doctrine which was announced by Manning, J., in *Ex parte Plowman*, 53 Ala. 440; and, while the doctrine was, in that case, announced with reference to public officials, it was the same doctrine which had always been held by the courts in construing statutes intended to protect the public against frauds and impositions.—36 Cyc. pp. 1173, 1174, and cases cited.

Section 24 of the Code, without its companion sections found in article 2 of the Code and the criminal statutes enacted for the purpose of prohibiting the violation of the provisions of the fertilizer law, would amount, practically, to nothing. With them, it consti-

[The State v. Lamar.]

tutes a wise and beneficial statute, and enables the purchasers of fertilizers and fertilizer materials, no matter by what name they are called, to protect themselves. through the state's aid, from being duped by the fraudulent representations of an unscrupulous manufacturer of or dealer in such materials. Were we to hold that section 5 of the act under consideration simply placed section 24 of the Code in the act, and that it did so without bringing cotton seed meal, when sold for fertilizing purposes, under the operation of the other provisions of the fertilizer law, civil and criminal, we would render said section a useless appendage to what, in our opinion, was intended to be a judicious and beneficent exercise of legislative authority.

5. It follows, therefore, that, in our opinion, cotton seed meal, when sold as fertilizer, must be registered as provided in section 24 of the Code, and that it must also be tagged as provided by the fertilizer law. Section 6881 of the Code provides that any person who sells, exchanges, or offers for sale or exchange, any bag, package, or barrel of fertilizer, which has not been tagged as provided by law, must, on conviction, be fined not less than $50 for each offense. As the affidavit in this case, in express terms, charges Law Lamar, Jr., with a violation of the above section, we are therefore of the opinion that the trial court erred in holding that, under the Constitution of the state, the affidavit and warrant were void. The judgment of the court below will therefore be reversed, and the cause remanded.

## On Application for Rehearing.

Undoubtedly, as stated by counsel for appellant in their briefs on this application for a rehearing, section 5 of the act of 1907 construed in the above opinion

means what it says and says what it means, and nothing else. The section says, in specific terms and in plain English, that "all cotton seed meal containing 7½ per cent. of ammonia which is sold for fertilizer purposes must be registered as other brands of fertilizer under the fertilizer law." The requirement of the fertilizer law as to the registration of fertilizer is found in section 24 of the Code, being the first section of article 2, on page 228, of the Code. In plain, unambiguous English, the above-quoted section 5 requires the named cotton seed meal, which is in fact an excellent fertilizer or fertilizer material, to be registered as required by said section 24, when sold for fertilizer purposes. Such cotton seed meal is thus plainly and unambiguously brought within the operation of said section 24 of the Code.

We state with equal certainty that sections 32 and 34 of the Code mean exactly what they say, nothing more and nothing less. Section 32, in plain English, requires all manufacturers and manipulators of fertilizers, who have registered their brands in compliance with the requirements of the fertilizer law, to obtain tags from the Commissioner of Agriculture and Industries, and to tag such fertilizer or fertilizer material. Section 34 expressly declares that it shall not be lawful for any manufacturer or company, either by themselves or their agents, to sell or offer for sale in this state any fertilizers or fertilizer materials that have not been registered with the Commissioner of Agriculture and Industries as required by the fertilizer law.

Section 6881 of the Code, in plain, unambiguous English, declares that any person who sells, exchanges, or offers for sale or exchange, any bag, package, or barrel of fertilizer, which has not been tagged as provided by law, must, on conviction, be fined not less than $50 for each offense.

[The State v. Dixon.]

The above-quoted section 5 of the act of 1907 and the above sections of the Code were all in existence on the day that the prosecution in this case was commenced. They plainly refer to each other, and our understanding has always been that, "where enactments separately made are read in pari materia, they are treated as having formed in the minds of the enacting body parts of a connected whole, though considered by such body at different dates, and under distinct and varied aspects of the common subject. Such a principle is in harmony with the actual practice of legislative bodies, and is essential to give unity to the laws and connect them in a symmetrical system. Such statutes are taken together and construed as one system, and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions."—Sutherland on Statutory Construction, § 288.

As we find nothing in the argument of counsel in their briefs on this application for a rehearing shaking in any way the views expressed by us in the original opinion rendered by us in this cause, the application for a rehearing is overruled.

Overruled.