### BOSWELL v. SECURITY MUT. LIFE INS. CO.

(Supreme Court, Appellate Division, Third Department. May 8, 1907.)

1. INSURANCE—AGENTS—COMPENSATION.

Laws 1906, p. 794, c. 326, § 97, limiting the amount a domestic life insurance company shall become liable for or "permit any person * * * to expend on its behalf or under any agreement with it" for obtaining new business, limits the amount which an insurance company may pay each agent for new business, and does not permit it to pay some of its agents compensation exceeding the amount fixed, though the total amount of all expenditures for new business is kept within the prescribed limitation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 111–114.]

2. CONSTITUTIONAL LAW—OBLIGATIONS OF CONTRACT—IMPAIRMENT.

The rule that the Legislature, under the reserved power granted to it by Const. art. 8, § 1, authorizing the Legislature to alter or repeal general

laws under which corporations may be formed, cannot interfere with or annul a contract between a corporation and another, does not apply where the making of the contract must have contemplated the possibility of a legislative change under the reserved power, or where the change is within a proper exercise of the police power.

3. SAME.

Laws 1906, p. 794, c. 326, § 97, limiting the amount life insurance companies may expend for procuring new business, is not invalid, as impairing the obligation of an existing contract between a company and a general agent empowered to procure applications for insurance and to appoint soliciting agents at a higher rate of compensation than the maximum fixed by statute; for the parties must have contemplated legislative action, especially in view of the fact that the contract was made subject to the condition that the company shall continue to be legally authorized to transact business.

4. INSURANCE—REGULATION—STATUTES.

The statute is also valid, when applied to such a contract, on the ground that the Legislature, in enacting it, exercised police power.

Submission of controversy on an agreed statement of facts, pursuant to Code Civ. Proc. § 1279, between William Boswell and the Security Mutual Life Insurance Company. Judgment ordered for plaintiff for a specified amount.

On October 30, 1901, at the city of Binghamton, in this state, the plaintiff, a resident of the state of Ohio, made a written contract with the defendant, a domestic corporation, whereby he was appointed general agent of the defendant in and for the states of Ohio, West Virginia, Tennessee, and Kentucky, for the purpose of procuring and effecting applications for insurance on the lives of individuals which should be satisfactory to the defendant, and of performing such other duties in connection therewith as might be required by the defendant. The parties by said contract agreed that the plaintiff should devote his entire time and best energies to the service of the defendant; that he should have the exclusive right to appoint agents within said district, for whose fidelity and honesty he should be responsible; and that the defendant would pay to the plaintiff a specified brokerage commission on the cash premiums as collected for the first year the insurance should be in force on all policies issued on applications written by the plaintiff or his subagents, which commission varied according to the nature and character of the policies, as specified in said contract. It was further agreed that such specified commission should not apply to any new forms of policies thereafter adopted by the defendant, but should apply only to the policies then in use, changes in premium rates or clauses in forms of policies not being construed as a new form of policy, and it was understood that the plaintiff should be paid in such new polices as large a commission as paid to any other manager or agent of the defendant. The contract by its terms was to continue 20 years. It contained other provisions and details unnecessary for the disposition of this case. Pursuant to such contract plaintiff established agencies and rented offices in the district aforesaid, and disbursed moneys in various ways in and about the defendant's business, and has continued to do so to the present time. As a result of such efforts and expenditures he has established within said district the business and reputation of the defendant and has received commissions as specified in said contract. At the time of the contract defendant transacted very little business within the district aforesaid, and it is the theory and claim of the plaintiff that one of the purposes contemplated by said contract was that plaintiff should build up the business and reputation of the defendant by his own efforts and expenditures, and that for the accomplishment of such purpose and that he might properly and adequately reap the fruits of such efforts and expenditures of himself, the period of 20 years was fixed in the contract as its duration, and that for his past labor and expenditures he has not been fully compensated by commissions thus far received, but that full compensation in the nature of the case and within the meaning and pur-

pose of the contract will come with the increased volume of business during the remaining years of the contract as a result of the organization conceived and perfected by himself.

In 1906 the Legislature of this state, by chapter 326, p. 794, of the Laws of that year, very radically amended the insurance law (chapter 690, p. 1930, of the Laws of 1892). Section 97 of such amendatory act is in part as follows: "No domestic life insurance corporation shall in any calendar year after the year nineteen hundred and six expend or become liable for or permit any person, firm or corporation to expend on its behalf or under any agreement with it (1) for commissions on first year's premiums, (2) for compensation, not paid by commission, for services in obtaining new insurance exclusive of salaries paid in good faith for agency supervision either at the home office or at branch offices, (3) for medical examinations and inspections of proposed risks, and (4) for advances to agents, an amount exceeding in the aggregate the total loadings upon the premiums for the first year of insurance received in said calendar year (calculated on the basis of the American experience table of mortality with interest at the rate of three and one-half per centum per annum) and the present values of the assumed mortality gains for the first five years of insurance on the policies on which the first premium, or instalment thereof, has been received during said calendar year, as ascertained by the select and ultimate method of valuation as provided in section eighty-four of this chapter." Section 101 of said amendatory act of 1906 also provides for standard forms of policies to be issued by life insurance corporations after January 1, 1907. Since January 1, 1907, plaintiff has procured insurance under said contract for which under the terms thereof he is entitled to be paid $191.54. The defendant admits liability of $132.06. This difference, though apparently trifling, is of much importance as affecting plaintiff's right to compensation for future services under the contract. The claim of the defendant for reduced liability is based on two grounds: First, that by said section 97 of chapter 326 of the Laws of 1906 plaintiff is limited to that amount; and, second, that by section 101 of said act the forms of policies have been changed, and that the contract expressly provides for reduced compensation to plaintiff in case of such change. If either of these contentions is correct, plaintiff can recover only the amount of $132.06, conceded to him by defendant.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

George M. Baker, for plaintiff.
F. W. Jenkins, for defendant.

COCHRANE, J. Plaintiff contends that section 97, c. 326, p. 794, of the Laws of 1906, as above set forth, is a limitation on the total expenditure of an insurance corporation, and is not a limitation on the expenditure of any particular agent; that the corporation may pay some of its agents compensation exceeding the proportional share of expense, as fixed by the statute, on the first premiums produced by such agents, provided the total amount of all expenditures contemplated by said statute is kept within the prescribed limitation. While the phraseology of the statute is not as clear or unambiguous as could be desired, one of the purposes thereof is to limit the amount paid each agent to a certain proportion of first premiums received by such agent. Unless such is the meaning, the following words: "Or permit any person, firm or corporation to expend on its behalf or under any agreement with it"—might have been omitted, and the statute would then have the meaning attributed to it by plaintiff. It should be so construed, if possible, as to give force and effect to the entire phraseology, and not so as to render some portion thereof meaningless or surplusage. The statute under consideration is dealing

exclusively with agents' compensation and expenses of procuring new insurance, and should be construed as meaning that the insurance corporation shall not "expend or become liable" for such compensation and expenses in "an amount exceeding in the aggregate" a certain proportion of first premiums "received in said calendar year" by itself, and also that no "person, firm or corporation" shall "expend on its behalf or under any agreement with it" for such compensation and expenses "an amount exceeding in the aggregate" the same proportion of first premiums "received in said calendar year" by such "person, firm or corporation." In no other way can the statute be construed so as to give effect to every part thereof. Thus construed, it applies to plaintiff's contract, and reduces his compensation as claimed by defendant.

It is the further contention of plaintiff that this construction of the statute, as applied to his contract, would impair the obligation thereof, and deprive him of his property rights without due process of law, and to that extent would be unconstitutional, and also that it was not the legislative intent that the statute should apply to such a contract. As a result of an intimation by Judge Story in deciding the Dartmouth College Case, there has been since the year 1846 a provision in our state Constitution which is found in section 1 of article 8 of the present Constitution in the following language:

"Corporations may be formed under general laws; but shall not be created by special act except for municipal purposes and in cases where in the judgment of the Legislature the objects of the corporation cannot be attained under general laws. All general laws and special acts passed pursuant to this section may be altered from time to time or repealed."

In amplification of this constitutional provision, section 40 of the general corporation law (Laws 1895, p. 452, c. 672) provides that:

"The charter of every corporation shall be subject to alteration, suspension and repeal in the discretion of the Legislature."

The rule doubtless is, as contended by plaintiff, that the Legislature, under this reserved power granted to it by the Constitution, cannot interfere with or annul a contract between a corporation and other parties. People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684; Mayor, etc., of New York v. Twenty-Third Street Railway Company, 113 N. Y. 311, 21 N. E. 60; Lord v. Equitable Life Assurance Society, 109 App. Div. 252, 262, 96 N. Y. Supp. 10. Such rule, however, I think, has no application to the present case: First, because the parties, when making the contract, must have contemplated the possibility of a legislative change like the one under consideration; and, second, because such change was a proper exercise of legislative power in the interests of the people and for the promotion of the general welfare, which power, when properly exercised for such a purpose, is not subject to constitutional restrictions. In People v. O'Brien, 111 N. Y. 48, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684, it was said:

"The authorities seem to be uniform to the effect that a reservation of the right to repeal enables a Legislature to effect a destruction of the corporate life, and disables it from continuing its corporate business (People ex rel. Kimball v. B. & A. R. R. Co., 70 N. Y. 569; Philips v. Wickham, 1 Paige, 590),

and a reservation of the right to alter and amend confers power to pass all needful laws for the regulation and control of the domestic affairs of a corporation, freed from the restrictions imposed by the federal Constitution upon legislation impairing the obligation of contracts. Munn v. Illinois, 94 U. S. 113, 123, 24 L. Ed. 77."

Now the plaintiff, when he became the general agent of the defendant under his contract, became vitally and essentially connected with its "domestic affairs." He became an important part of its mechanism. The machinery of life insurance has largely been conducted through the instrumentality of agents. Such corporations have through their agents promulgated, performed, and perpetuated their policies, plans, and purposes; and through them the wrongs and abuses, if any, of life insurance, have sometimes been inflicted on a confiding public. When plaintiff made his contract, he knew that he was to become an essential factor in the domestic affairs and internal organism of the defendant, and that such domestic affairs and internal organism were, under the reserved power of the Constitution of this state, subject to legislative change. He became identified with the operation, development, and business life of the defendant, and one of the organs of its corporate existence. In this respect, at least, the case is very materially different from the case of Mottley v. Louisville & Nashville Railroad Company, 150 Fed. 406, recently decided by the United States Circuit Court for the Western District of Kentucky, and much relied on by plaintiff.

In People v. Globe Mutual Life Insurance Company, 91 N. Y. 174, a similar question arose between a general agent of an insurance corporation seeking compensation for the unexpired term of his service under a contract with a life insurance company which had been dissolved, and the court said:

"What had happened was a dissolution of the contract by the sovereign power of the state, rendering performance on either side impossible. And this result was within the contemplation of the parties, and must be deemed an unexpressed condition of their agreement. One party was a corporation. It drew its vitality from the grant of the state, and could only live by its permission. It existed within certain defined limitations, and must die whenever its creator so willed. The general agent who contracted with it did so with knowledge of the statutory conditions, and these must be deemed to have permeated the agreement and constituted elements of the obligation. People v. Security Life Ins. Co., 78 N. Y. 115, 34 Am. Rep. 522."

In People v. Formosa, 131 N. Y. 483, 30 N. E. 493, 27 Am. St. Rep. 612, it was said:

"The business of life insurance in this state is mainly carried on by insurance companies authorized by law, and minute provisions are made regulating their incorporation and their business, and a department of the state government has been constituted to supervise them. The corporations organized under the laws of this state for life insurance are absolutely under the direction and control of the Legislature. It may specify how and on what terms they may do business, and enact laws regulating their conduct and the conduct of their agents, for their protection and the protection of their policy holders, and enforce obedience to such laws by such penalties, forfeitures, and punishments as it may, within constitutional limits, prescribe. As all these corporations must act through agents, it has the same power and authority to regulate the conduct of their agents as it has to regulate the corporations themselves. It would be quite preposterous to say that the Legislature could,

In the exercise of its legitimate authority, regulate these corporations and prescribe the terms under which they may exist and do business, and yet could not by similar laws regulate and control the conduct of their agents. When these corporations seek the benefits and privileges of the laws creating and authorizing them, they must conform to the laws enacted for their conduct, and if they are unwilling to do so they must go out of existence. So, too, all persons who seek to act as agents of such corporations must conform to the laws regulating the business of such corporations or cease to act for them."

What was said in the above case is doubly emphasized when we recall that the act of 1906 was created in response to an aroused and urgent public sentiment as the result of grave evils and abuses disclosed by the processes of a legislative investigation. And when it is also recalled that among such abuses were the methods employed by certain agents, the claim of plaintiff that his contract was not within the purview of the statute would seem to be completely refuted. Were there otherwise any doubt that the legislation in question was within the contemplation of the parties to the contract, such doubt would be dissipated by reference to the following provision in such contract:

"This contract is made subject to the condition that the said company is and shall continue to be legally authorized to transact business in said district. Should authority to transact business in any section thereof be at any time terminated, this contract shall become null and void so far as new business in such section is concerned."

True, this provision in terms only relates to a total cessation of business. But the parties clearly had in mind the possibility that the Legislature of this state might interdict the defendant from all business within the states comprising the plaintiff's territory. They were also bound to know, what no one disputes, that said Legislature might put the corporation to death. Knowing all this, it was a psychological impossibility for the parties not to include within their mental grasp the idea that the corporation might be limited or restricted in its operation in such a way as to affect the plaintiff's contract. The greater includes the less. The right and power to take the corporate life includes by necessary implication the right and power to maim or paralyze—to curb, check, and control that which concerns the corporation. And the right and power to terminate and destroy the defendant's business within the plaintiff's district included by necessary implication the right and power to regulate and control such business and to prescribe the terms and conditions under which it might be conducted; and when the parties making their contract contemplated and provided for such termination and destruction by the Legislature they must also have had in mind the possibilities of legislative regulation and control.

Not only was the statute in question within the contemplation of the contract, but it was within the power of the Legislature, regardless of constitutional restrictions as applied to such contract. The power of the Legislature to make that criminal which before was lawful cannot be questioned. In 2 Parsons on Contracts (9th Ed.) p. 827, the proposition is stated as follows:

"That the illegality of a contract is in general a perfect defense must be too obvious to need illustration. It may, indeed, be regarded as an impossibility by act of law, and it is put on the same footing as an impossibility by act of

God; because it would be absurd for the law to punish a man for not doing, or, in other words, to require him to do that which it forbids his doing. Therefore, if one agrees to do a thing which it is lawful for him to do, and it becomes unlawful by the act of the Legislature, the act avoids the promise."

Section 53 of the insurance law, as amended by the act of 1906, makes criminal the violation of any provision of the insurance law. The Legislature has therefore declared that henceforth the payment by the defendant of such compensation as plaintiff claims shall be a crime. As above stated, such legislation is in the interests of the people, for the promotion of the general welfare, and for the protection of policy holders.

Again referring to the case of People v. Formosa, supra, which is peculiarly instructive as concerns this case, I make the following extended quotation, the length of which seems to be justified by its pertinent bearing on the question now under consideration:

"The main point, however, upon which the learned counsel for the defendant relies here, is that the act making it a criminal offense for him to pay a rebate to induce any person to effect insurance in the company was unconstitutional, on the ground that it arbitrarily and unjustly abridged his natural rights and personal liberty in the conduct of his business. He claims that the act has no relation to the public safety or welfare, and hence that it could not be enacted under the police power which the state, through its Legislature, can exercise. Life insurance companies perform very important functions in modern society. They operate in all parts of the state, and a very large number of people are interested in them. They are resorted to for the purpose of making provisions for families and dependents after the death of the insured, and for that purpose many persons invest in them the accumulations of their labor and their thrift. The nature of insurance contracts is such that each person effecting insurance cannot thoroughly protect himself. He is not competent to investigate the condition and solvency of the company in which he insures, and his contracts may run through many years, and mature only, as a rule, at his death. Under such circumstances it is competent for the Legislature, in the interest of the people and to promote the general welfare, to regulate insurance companies and the management of their affairs, and to provide by law for that protection to policy holders which they could not secure for themselves. Under such conditions there should be a wide range of legislative power to promote the public welfare in the exercise of the police power, and the true boundaries of that power it would be difficult in such a case to prescribe. * * * We have not here the question as to what a private individual may do in the conduct of his private business, but the question here is as to the power of the Legislature over corporations and their agents. The power exercised over these insurance companies and their agents is similar to that exercised by the Legislature over banks and railway corporations; and it has never been doubted that such power exists, and the legislative power to regulate them and their agents in the minutest particular in the interest of the public has never been questioned."

If, as is clearly indicated in the case last cited, this act of the Legislature is an exercise of its police power, the authorities are abundant that such power may not be limited or restricted by the provisions of contracts between individuals or corporations. Buffalo East Side Railroad Company v. Buffalo Street Railroad Company, 111 N. Y. 140, 19 N. E. 63, 2 L. R. A. 284, and cases there cited; Corporation of the Brick Presbyterian Church v. Mayor, etc., of New York, 5 Cow. 538; J. H. Labaree Company v. Crossman, 100 App. Div. 499, 92 N. Y. Supp. 565, affirmed 184 N. Y. 586, 77 N. E. 1189; Heine v. Meyer, 61 N. Y. 171; Kingsley v. City of Brooklyn, 78 N. Y.

216; People ex rel. New York Electric Lines Company v. Squire, 107 N. Y. 605, 14 N. E. 820, 1 Am. St. Rep. 893.

Having reached the conclusion that the statute limits the amount which the defendant may lawfully pay the plaintiff, it is unnecessary to consider the further question raised by defendant as to the difference in the forms of policies.

Judgment is ordered in favor of plaintiff for $132.06, the amount conceded by defendant, without costs. All concur.