## Lyman v. Ramey, Insurance Commissioner of Kentucky.

(Decided June 9, 1922.)

### Appeal from Franklin Circuit Court.

1. Statutes—Subjects and Titles of Acts—Insurance.—Section 724 of the statutes requires fidelity and guaranty companies to comply with all laws regulating fire and marine insurance companies, whether enacted before or since the enactment in 1892 of section 724, supra, since it makes no reference to any particular statute or part of statute by its title or otherwise, but refers to the law generally governing a particular subject.

2. Statutes—Subjects and Titles of Acts.—Section 51 of the Constitution providing that no law shall be revised, amended or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred shall be re-enacted and published at length, is not violated by section 724, supra, requiring fidelity and guaranty companies to comply with all provisions of law applicable to fire and marine insurance companies, without re-enacting or publishing the laws thus adopted by reference.

3. Insurance—Rebating.—Section 762a-19, forbidding rebating by insurance agents, is violated where the secretary of a corporation organized to promote the business of its members, without capital stock and not for profit, acting as agent for an insurance company, writes insurance for the members of his corporation and pays his commissions therefor to the corporation, thereby reducing the assessment against its members to pay his salary and expenses as secretary of the corporation.

JOHN D. CARROLL and R. L. PAGE for appellant.

CHAS. I. DAWSON, Attorney General, O'REAR & FOWLER and W. L. WALLACE for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellant, in compliance with our insurance laws, applied to appellee for a license to write surety bonds and liability insurance in this state, the former as agent of the Fidelity and Deposit Company of Maryland and the latter as agent of the London Guarantee and Accident

Company. Both of these non-resident companies, by their compliance with local laws, were authorized to do business in the state and each had designated appellant as its agent.

Appellee refused to issue the license to appellant, who possessed all the statutory qualifications, solely because the methods under which he proposed to write both kinds of insurance were considered by the insurance commissioner to be in violation of our statutes against rebating. Appellant then filed this action for a mandamus requiring the issuance of a license to him, which was refused by the lower court, hence this appeal.

It is insisted for appellant: (1) That the statutes against rebating are not applicable to companies writing the kinds of insurance he proposes to write, and (2) that the plan upon which he proposes to operate, fully set out in his petition, does not amount to rebating as denounced by the statute.

The only sections of our statutes which prohibit rebating are 656 and 762a-19, the former by its terms relating only to life insurance companies and agents, while the later, applicable by its terms to all insurance companies and agents, is a part of a subdivision of the insurance law applicable primarily to fire and marine insurance companies and their agents.

But for appellee it is contended that an act of the legislature, enacted in 1892 and being sections 723, 724 of the statutes, requires all such companies as appellant will represent to comply with all laws applicable to fire insurance companies, including 762a-19, *supra,* and it was upon this theory that the lower court rested its judgment.

Section 723 provides in part:

"That any fidelity or guarantee company, duly incorporated under the laws of any state or of the United States, and having under its charter the power to become surety be, and the same is hereby, authorized and empowered to insure the fidelity of persons holding places of trust or responsibility in, to or under this state, or any county, city, corporation, company, government, person or persons whatsoever, to become security for the faithful performance of any trust, office, duty, contract or agreement, and to supersede any judgment or to go upon any appeal, attachment, replevin, guardian, trustee administration or other bond."

Section 724 reads:

"That said companies shall comply with all provisions of law applicable to fire and marine insurance companies of other states, doing business in this state."

It is important at the beginning to notice that while the legislature has adopted a comprehensive system or code of laws dealing with and regulating insurance companies generally, with subdivisions treating of life insurance companies and their agents as one class and fire and marine insurance companies and their agents as another, there is no law at all, other than the general provisions applicable to all insurance companies whatever the kind, relating to fidelity and guaranty companies except the act of 1892, *supra,* which was enacted prior to the enactment in 1893 of the system or code of insurance laws, *supra.* Not only so, but this act of 1892 not only affords the only specific authority for regulating these companies as prescribed by section 724, but it also by section 723 furnishes their only authority for doing in this state the character of insurance business in which they are engaged.

All of these acts, however, were enacted at the same session of the legislature, which was the first following the adoption of our present Constitution and was of such long duration because the new Constitution made necessary the adoption of practically an entirely new system of statutory law, especially with reference to corporations.

This simple statement is, we think, sufficient of itself to show the utter lack of merit in the contention made for appellant that the law applicable to fire insurance companies, and especially 762a-19 on rebating, is not applicable to appellant's companies simply because section 724 so providing was enacted prior to section 762a-19; and doubtless sufficient also to show that if 724, prescribing the method for regulating these companies, is unconstitutional, as appellant contends, the entire act of 1892 is void and such companies are without authority to do business in this state, since it is hardly conceivable the legislature would have authorized them to operate here as is done by the first section of the act, unless they were to be regulated as prescribed by the second section thereof.

But, however this may be, the above statement at least makes it plain that the legislature, by first providing that all fidelity and guaranty companies shall comply with all laws applicable to fire and marine insurance com-

panies and then by adopting a comprehensive code for the regulation of the latter, intended to provide for the former, and believed that they had done so. Not only so, but subsequent legislatures were evidently of the same mind, for they have amended and extended the codes applicable to both life and fire insurance companies to meet changed conditions in the insurance business, while there has never been any change in the simple provisions of sections 723 and 724 authorizing non-resident fidelity and guaranty companies to do business in the state and requiring them to comply with the fire insurance code, despite the tremendous expansion of this class of insurance which was almost at its beginning when the act of 1892, *supra,* was enacted.

What other possible reason could have induced that and succeeding legislatures to refrain from specific regulation of these insurance companies, which, if appellant's contention is sound, are entirely without statutory regulation except of the most general kind, while fire and life insurance companies are so exactingly regulated? Obviously there is no sound reason why life and fire insurance companies and their agents should be forbidden, as a matter of public policy, from rebating premiums that is not just as applicable to fidelity and guaranty insurance companies and their agents, and certainly no one can think for a moment that the legislature of 1892-3, or any succeeding legislature, ever intended or believed that the latter companies were not required by the laws enacted to refrain from such practices.

After stating the general rule to be, that when one statute adopts another by specific and descriptive reference thereto, the adoption takes the statute as it exists at the time, the author in 25 R. C. L. 908, in his discussion of reference statutes, continues: "But when the adopting statute makes no reference to any particular statute or part of statute by its title or otherwise, but refers to the law generally which governs a particular subject, the reference in such a case includes not only the law in force at the date of the adopting act but also all subsequent laws on the particular subject referred to, so far at least as they are consistent with the purpose of the adopting act."

The cases cited in support of the quoted text fully sustain it, as do the cases, with one possible exception, which are collated in a note to Hutto v. Walker County

(185 Ala. 505) in Ann. Cas. 1916B 375 on the same question.

We are therefore clearly of the opinion that the legislature has intended and attempted to prohibit rebating by insurance companies of all kinds, and that by reason of section 724, *supra,* insurance companies such as appellant represents are bound to comply with all laws applicable to fire and marine insurance companies, no matter when enacted, unless as contended for appellant, section 724, *supra,* is violative of section 51 of our Constitution.

It is plain, we think, that no part of this section is involved here unless it be the latter portion reading: "But so much thereof as is revised, amended, extended or conferred shall be re-enacted and published at length," since it is not claimed the title of the act is defective, and it does not attempt to "revise, amend, extend or confer" the provisions of any law by reference to its title. We may still further narrow our inquiry by eliminating from the last clause the words "revise" and "amend," since, as is conceded, the act does not revise or amend any law.

Our question then is, does the act of 1892 "extend" or "confer," as those words are used in section 51 of the Constitution, the provisions of section 762a-19 of the statutes, and if it does, it is invalid to that extent, since same are not re-enacted and published at length.

While this section of the Constitution has been before this court about as often as any other, its application to facts such as this record presents has never been decided, nor has the meaning of the words "extend" and "confer" as therein employed, even been discussed by this court, although our statutes are replete with such legislation, but the precise question now before us, under a like constitutional provision, has been expressly decided in other jurisdictions and the inhibition held inapplicable.

In discussing the question the Supreme Court of Alabama said, in Savage v. Wallace, 165 Ala. 572:

"There is a class of statutes known as 'reference' statutes, which impinge upon no constitutional limitation. They are statutes in original form, and in themselves intelligible and complete, 'statutes which refer to, and by reference adopt, wholly or partially, pre-existing statutes. In the construction of such statutes, the statute referred to is treated and considered as if it were incorporated into and formed a part of that which makes the reference. The two statutes co-exist as separate and distinct legislative enactments, each having its appointed

sphere of action; and the alteration, change, or repeal of the one does not operate upon, or affect the other.' Phoenix Assur. Co. v. Fire Dept., 117 Ala. 631, 42 L. R. A. 468, 23 So. 483. Such statutes are not strictly amendatory or revisory in character, and are not obnoxious to the constitutional provision which forbids a law to be revised, amended, or the provisions thereof to be extended or conferred, by reference to its title only. That prohibition is directed against the practice of amending or revising laws by additions or other alterations which, without the presence of the original act, are usually unintelligible. Ex Parte Pollard, 40 Ala. 100; State ex rel. Bragg v. Rogers, 107 Ala. 444, 32 L. R. A. 520, 19 So. 909.''

This excerpt was quoted with approval by the Supreme Court of the state of Washington in the case of State v. Trausick, 64 Wash. 69, 116 Pac. 651, 35 L. R. A. (new series) 802, in support of the conclusion that the adoption by a new law of all existing laws with reference to cities of a certain class, was not in violation of the provisions of the Constitution of that state, which, it is true, does not use the words "extend" and "confer" but which plainly was intended to prevent the same legislative abuses at which section 51 of our Constitution is directed, and provides that "the act revised or the section amended shall be set forth at full length."

Under nearly the same conditions this court in Bryan v. Voss, 143 Ky. 422, 136 S. W. 884, held that section 51 of our Constitution was not violated by the provisions in an act for a commission form of government in cities of the second class, that "All laws applicable to and governing cities of the second class and not inconsistent with the provisions of this act shall continue to apply to and govern each city that may organize under this act. And all bylaws, ordinances and resolutions in force in any such city and not inconsistent with the provisions of this act, shall continue to be in force until altered or repealed in the manner provided for in this act."

This was done, it is true, upon the ground that the provisions in the existing laws referred to were simply continued in force or left untouched by the new law which was a complete and distinct law rather than an amendment in so far as it substituted new provisions for some of the provisions of the old law which were repealed expressly or by implication. In Purnell v. Mann, 105 Ky. 87, 50 S. W. 264, drawing the same distinction and cited

in support of the conclusions in Bryan v. Voss, we held that a new and independent act which adopted by reference only some of the provisions of a general election law and substituted new matter for other portions thereof, did not offend section 51 of the Constitution.

While these two local cases and the one from Washington are distinguishable on the facts they set forth and exemplify the meaning and effect that should be given this whole section, and in that way support the Alabama case, *supra*, upon the point now being considered.

In the Purnell case, after holding that while section 51 was mandatory, a substantial compliance therewith was sufficient, the court says: "The question then arises how to construe the provision, but so much thereof as is revised, amended, extended or conferred shall be re-enacted and published at length, so as to substantially comply with that section. We think the manifest intention was that the provision should apply to so much of the law as, after the passage of the new act, remains in force *amended* . To construe it otherwise would involve an absurdity, &c."

The fact that many state Constitutions contain a similar provision is then noticed and the following statement of the purpose of such a provision is quoted from People v. Makaney, 13 Mich. 497, by Cooley, J.: "The mischief designed to be remedied was the enactment of *amendatory statutes* in terms so blind that legislators themselves were sometimes deceived in regard to their effects and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws, &c."

Then, in proof of the conclusion that the act under consideration did not offend section 51 when interpreted so as to accomplish its designed purpose, the court summarizes as follows: "There is no direct reference made in the act in question to any particular section of the general election law amended or repealed by it, nor do we think section 51 expressly or impliedly requires it done. The act as passed and published is full and specific enough as to all subjects embraced by it to show for what parts of the general election law it is substituted, and these parts are both in terms and by implication repealed, leaving the residue unaffected and in full force. Manifestly neither members of the General Assembly nor the people could misunderstand or be deceived as to the purview, purport or effect of the act."

And so with the act now before us. There is no direct reference to any particular section of the laws regulating fire insurance companies extended or conferred by it, if such is its effect, nor do we think section 51 expressly or impliedly requires it done. The act as passed and published is full and specific enough to show on its face exactly what the legislature meant to accomplish thereby, and manifestly, therefore, neither members of the General Assembly nor the people could misunderstand or be deceived as to the purview, purport or effect of the act.

Another case directly in point and supporting this conclusion is State v. McKinley (Ark.), 179 S. W. 181, since the Arkansas Constitution contains the same provision exactly as that part of section 51 involved here.

In that case an act providing that all municipal elections shall be held as prescribed by law for holding state and county elections so far as same may be applicable and without re-enacting and publishing same at length, was held not within the constitutional prohibition. In support of that conclusion the court quotes the same excerpt we have quoted from Savage v. Wallace, *supra,* as well as what we have quoted from People v. Mahoney, *supra,* and also the following: "This constitutional provision must receive a reasonable construction with a view to give it effect. . . . But *an act complete in itself* is not within the mischief designed to be remedied by this provision and can not be held to be prohibited by it without violating its plain intent."

Although Colorado, North Dakota and Pennsylvania in addition to those already named, and possibly other states, have this same constitutional provision, we have not been able to find any case and none is cited holding it probibitive of the adoption by reference in a new and independent act of the whole or a part of an existing law which is not repealed, amended, or altered in the least; nor have we been able to find any attempt to define "extend" or "confer" as thus used, but the Supreme Court of Colorado has said that this clause goes further than the general constitutional provision about amendments "and extends to cases of amendments by implication," but that it should not be taken to apply alike to all legislative enactments, for such construction would be unreasonable and would impose more serious inconveniences than those sought to be remedied, and that having regard to the argument from inconvenience, it should be enforced

according to its reason and spirit and the evils against which it is directed. Denver Circle R. Co. v. Nestor, 10 Colo. 403.

The New York and New Jersey Constitutions, to prevent the same legislative practices, specifically declare that no act shall be passed which shall provide that any existing law or part thereof shall be deemed a part of said act except by inserting it therein, yet the courts of those states have held that an act complete and perfect in itself —the purpose, meaning and full scope of which are apparent on its face—is valid, though it provides for actions or means for carrying its provisions into effect by reference to a course of procedure established by other statutes. Christie v. Bayonne, 48 N. J. L. 490; People ex rel. Commissioners v. Banks, 67 N. W. 575.

From a consideration of these and other authorities cited, it is said in 26 A. & E. Enc. of Law at page 711, and correctly we think: "Therefore, it is generally held that if an act is complete in itself, it may adopt rules of construction or modes of procedure for carrying out its provisions by reference to other statutes, whether or not this provision (like ours or the N. Y. provision) is contained in the Constitution, and such adoption by reference may include references to local as well as general laws. Statutes of this character are known as reference statutes."

And the Supreme Court of Pennsylvania, with the same constitutional prohibition as our section 51, has held that this same rule obtains not only in regard to reference statutes where the act adopts a prior procedural statute, but also where it adopts a statute affecting substantial rights. In re Guenthoer, 235 Pa. St. 67, 63 Atl. 617.

We therefore conclude that since the act of 1892 is a new act not amendatory in character, it is not violative of section 51 of the Constitution, and that appellant and his companies by reason thereof must comply with section 762a-19, *supra*.

2. We entertain no doubt whatever that the method by which appellant desires to write both surety bonds and liability insurance amounts to rebating under the provisions of 762a-19, which are in so far as pertinent:

"No insurance company nor any agent, in connection with placing or attempting to place insurance, shall pay, allow or give, or offer to pay, allow or give, nor shall any person receive, any rebate of premium on a policy, or any

special advantage in dividends or other benefits, paid employment or contract for services, or any valuable consideration, or inducement whatever, not specified in the policy, or give, sell or purchase, or offer to give, sell or purchase, in connection with placing or attempting to place insurance, anything of value whatsoever not specified in the policy."

The plan may be briefly described as follows: Appellant is secretary of the Kentucky Association of Highway Contractors. This association has no capital stock, is composed entirely of highway contractors, and its purposes are to promote their business interests but not to make profits for itself. Appellant is the only paid officer or employe, and his salary and the expenses of his office and his activities are to be paid by dues or assessments against members of the association.

It is his avowed purpose, if licensed, to write bonds and indemnity insurance for members of the association and possibly others; and the commissions earned by him in so doing are to be turned into the association and used to pay his salary and the expenses of his office, thus reducing the dues or assessments against members for whom he writes the insurance. Plainly therefore the members for whom he writes insurance are rebated such portions of the premiums as reduce their dues or assessments.

That such practice violates the plain and explicit provisions of 762a-19, *supra,* seems too evident to require discussion, and that organizations of bankers, farmers or others might be profited by and desire to avail themselves of a similar organization and method of obtaining insurance, is wholly beside the question.

Nor is, as counsel assert, this conclusion inconsistent with an order of a member of this court in which three other members concurred, granting an injunction in the case of L. W. Botts v. J. F. Ramey, Insurance Commissioner, pending in the Franklin circuit court. In that case the Insurance Commissioner was threatening to cancel a license granted to Botts, an officer and employe of the Fidelity & Columbia Trust Co., who was writing insurance for members of the general public in his own name, but accounting to the trust company by whom he was employed, for all commissions. That holding was based upon the ground that the trust company, organized for profit and empowered by its charter to act as insurance agent, was really the agent of the insurance

companies and writing the insurance through its agent Botts, whereas appellant's employer is not by its charter authorized to act as such agent or permitted to earn profits.

Hence appellant, when writing insurance as he proposes, must act for himself and not for his employer, and when he indirectly returns to those for whom he writes insurance the commissions earned by him for so doing, he is rebating as that word is used and defined in 762a-19 *supra.*

Judgment affirmed.