ASSOCIATION OF ARMY AND NAVY STORES, INC., Plaintiff, *v.* H. S. CHARDAVOYNE, INC., Defendant.

City Court of New York, Trial Term, New York County, October 21, 1940.

*Winthrop, Stimpson, Putnam & Rogers* [*Walter J. Holyke* of counsel], for the plaintiff.

*Hughes, Buck, Smith & Stowell* [*John F. Kiernan* of counsel], for the defendant.

RYAN, Ch. J. Action brought to recover damages in the sum of $1,777.82 for an alleged breach of contract entered into between the parties, and was tried by the court without a jury. The facts, briefly stated, are as follows: On August 3, 1932, plaintiff and defendant entered into a contract whereby plaintiff agreed to place defendant's name on its list furnished to and circulated among its

members made up of veterans and present members of the army and navy and their families, advising those persons to buy milk from the defendant. In return defendant agreed to pay to plaintiff a sum equal to five per cent of the amount of the milk so purchased. The plan of the plaintiff was, upon receipt of such five per cent, to deduct the overhead expenses of the association and then to pass along to its members whatever balance remained of the five per cent so received from the defendant and other store owners who had entered into similar agreements affecting other commodities.

On April 10, 1933, chapter 158 of the Laws of 1933 became operative, upon the approval of the Governor. By the terms of that act a Milk Control Board was created with authority to fix the minimum prices to be charged for milk sold by the retailer to the consumer. The minimum price was fixed at nine cents per quart. The constitutionality of such minimum price and the acts of the Board were upheld in the case of *People* v. *Nebbia* (262 N. Y. 259; affd., 291 U. S. 502) on the theory of due exercise of the police power of the State.

A reading of section 312-e of that act (Laws of 1933, chap. 158) discloses the following prohibition: " After the Board shall have fixed prices to be charged   *   *   *   it shall be unlawful for a milk dealer to sell   *   *   *   at any price less or more than such price   *   *   *   and no method or device shall be lawful whereby milk is bought or sold   *   *   *   whether by any discount, or *rebate*, or free service, or advertising allowance, or a combined price for such milk together with another commodity or commodities, or service or services, which is less or more than the aggregate of the prices for the milk and the price or prices for such other commodity or commodities, or service or services, when sold or offered for sale separately or otherwise, except as provided in subdivision c of section three hundred and seventeen of this article." The exception noted in subdivision c of section 317 does not affect this case. It appears that the defendant had submitted the contract dated August 3, 1932, between it and the plaintiff and upon which this action is founded, to the Milk Control Board for a ruling; thereafter the Board advised that the contract violated the act of 1933, whereupon defendant notified plaintiff that it would discontinue the payment of the five per cent (rebate) to the plaintiff. Thus, the present action.

Legislation by the State under its police power is an implied condition of all private contracts, and when such legislation prohibits one of the parties to act under a pre-existing agreement and that party conforms to the new law, it is an excuse for nonperformance. (*Home Building & Loan Assn.* v. *Blaisdell.* 290 U. S.

398, 435; *Wolff* v. *Mortgage Commission*, 270 N. Y. 428, 432; *Shepherd* v. *Mount Vernon Trust Co.*, 269 id. 234, 243; *Boswell* v. *Security Mutual Life Ins. Co.*, 119 App. Div. 723.)

As far as this case is concerned the important part of the act above referred to and partly quoted, is in my opinion the prohibition of any rebate. The word " rebate " has been consistently used by many legislative bodies and has received a fixed judicial meaning. One of the best definitions of the word may be found in the case of *Standard Oil Co. of Indiana* v. *United States* (164 Fed. 376 [7th C. C. A.]; certiorari denied, 212 U. S. 579). In that case the court construed the rebate prohibition in the Elkins Act. In the case under consideration the proclaimed minimum price for milk was fixed by the Milk Control Board. In the case of *New York Central & H. R. R. R. Co.* v. *General Electric Co.* (83 Misc. 529; affd., 219 N. Y. 227) a similar question was involved. There the railroad company sued the General Electric Company to recover freight charges; the latter counterclaimed for a reduction of twenty cents per ton by reason of a contract to perform certain yard service for the railroad. At page 543 the trial court (VAN KIRK, J.) stated it was a " preference " over other shippers. Further on in his opinion (p. 551) it appears the contract had been submitted to the Commerce Board, which decided against the " rebate " and the court said that although the Board did not have " jurisdiction of the contract " it did have " the identical controlling question which must be decided in determining the case." The trial court decided the issue in favor of the railroad company and rejected the counterclaim. The decision was reversed by the Appellate Division (167 App. Div. 726) which in turn was reversed by the Court of Appeals (*supra*) and reinstated the judgment of the trial court, holding (at p. 235) that " an allowance in such circumstances would constitute an unlawful rebate."

The plaintiff in the case at bar argues that it is in the same situation as if the defendant advertised in one of the city newspapers and received the profits less overhead. The fallacy in the hypothecated case is that the stockholders of the newspaper do not buy milk from the defendant, so the parallel is incomplete.

Another case involving the question of a rebate is that of *United States* v. *Lehigh Valley R. R. Co.* (222 Fed. 685; affd., 243 U. S. 44) where the government sued the carrier for an alleged violation of the rebate prohibition contained in the Elkins Act. It seems that Sheldon & Co. were " forwarders " of a large quantity of freight collected and shipped by them over the Lehigh Valley for which the railroad paid them a commission. It was that arrangement the government stopped. The railroad argued (at p. 686): " The carrier has a right to employ persons to solicit business,

just as it had a right to employ clerks and employees of all kinds to do the business, and any payments for such a purpose cannot constitute a rebate, concession, or discrimination within the meaning of the act." In reply thereto Judge Hough wrote (p. 686): " This is all true; but I do not think that the situation is brought within this decision when a shipper is employed, and the amount of his wage or the value of his services is regulated or gauged by the freight value of his shipments * * * but said result in my judgment is illegal because of the bald fact that, when the dealings between Sheldon & Co. and the railroad are ended, Sheldon has finally paid less for the transportation of goods in which he had a special property, and as to which he was a shipper, than did other persons not engaged in the forwarding business." In another case (under the Elkins Act), *Spencer Kellogg & Sons, Inc.*, v. *United States* (20 F. [2d] 459 [2d C. C. A.]; certiorari denied, 275 U. S. 566), there was a conviction for receiving a " rebate " for elevating grain at Buffalo and loading it into freight cars of an interstate carrier for which it received one cent per bushel. Spencer Kellogg then gave one-half a cent per bushel to its consignees. The Circuit Court of Appeals held that to be an illegal " rebate " and affirmed the conviction.

Section 65 of the former Insurance Law (now section 188 of the new act of January 1, 1940) prohibited any insurance agent from giving any " rebate " from the premium charged, for his services to the insurance company. That section was applied in a case where the plaintiff, an insurance agent, agreed to give the defendants a part of his commission for placing their insurance with various companies. To the plaintiff's action for his share, defendants set up the illegality of the " rebate." The court sustained the answer and refused to strike it out as insufficient in law on the ground that the complaint and answer set up an illegal " rebate " under section 65 of the Insurance Law. (*Sturm* v. *Truby*, 245 App. Div. 357. See, also, *Arcim Corp.* v. *Pink*, 253 id. 428; affd., 280 N. Y. 721; *Lyman* v. *Ramey*, 195 Ky. 223; 242 S. W. 21.)

By the act of June 19, 1936, the Congress amended the Clayton Act (U. S. Code, tit. 15, § 13-a) to prohibit a " rebate," but in section 13-b excepted " co-operative associations " similar to the plaintiff in this action. In effect the plaintiff seeks to have the court write in by construction a similar exception in the New York Milk Control Act of 1933, which of course may not be done. In *Johnson* v. *Hudson River R. R. Co.* (49 N. Y. 455, 461), Allen, J., writing for the court, said: " It is not for the court, acting upon conjecture and surmising what may have been the intent of the Legislature, to interpolate exceptions in the statute." To the same effect, *McCluskey* v. *Cromwell* (11 N. Y. 593, 602); *McKuskie* v. *Hendrickson* (128 id. 555, 558).

Furthermore, the material word involved in this discussion, " rebate," was construed in the *Standard Oil* case (*supra*) in 1908; and the Elkins amendment appears to have been the model or standard used in connection with the drafting of the New York Milk Control Act, wherefore, it would seem proper that the construction given to the word by the Federal courts should be followed here. (*Bellegarde* v. *Union Bag & Paper Co.*, 90 App. Div. 577, 581; *Lipstein* v. *Provident Loan Society*, 154 id. 732, 734; *Matter of Newman* v. *Newman*, 169 id. 745, 749.) The word, as previously stated, was also construed by the Court of Appeals in 1916 in the *New York Central & H. R. R. R.* case (*supra*) and we must assume that the Legislature was cognizant of the decision in that case and used the word accordingly in 1933. (See, also, *Perkins* v. *Smith*, 116 N. Y. 441, 448; *Pouch* v. *Prudential Ins. Co.*, 204 id. 281, 288.)

It is my opinion, therefore, that after the passage of chapter 158 of the Laws of 1933, and the fixing of a minimum price by the Milk Board, the prior agreement between the plaintiff and the defendant became illegal and void; and that the complaint herein seeking as it does to recover on such illegal and void agreement must be dismissed. Exception to plaintiff. Twenty days' stay.